MARK SPOLYAR (#187673)
BAKER BOTTS L.L.P.
620 Hansen Way
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile:  (650) 739-7699
*Email: mark.spolyar@bakerbotts.com*

SUSAN DILLON AYERS (*pro hac vice*)
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard
1500 San Jacinto Center
Austin, Texas 78701
Telephone:  (512) 322-2500
Facsimile:  (512) 322-2501
*Email: sue.ayers@bakerbotts.com*

Attorneys for Third-Party
VIGNETTE CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SBJ IP HOLDINGS 1, LLC, | **CASE NO.  3:08-mc-80109-SI** |
| Plaintiff, | (U.S.D.C. Eastern District of Texas) |
| vs. | **THIRD PARTY VIGNETTE CORPORATION'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL** |
| NETFLIX, INC., AMAZON.COM, INC., and BORDERS GROUP, INC. | Date: August 15, 2008<br>Time: 2:00 P.M.<br>Dept.: Courtroom 10, 19th Floor<br>Judge:  The Honorable Susan Illston |
| Defendants. | |

1

# <u>TABLE OF CONTENTS</u>

2

3

INDEX OF AUTHORITIES ..................................................................................................... ii

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ........................................................................2

        A.      The original subpoena issuing from the Western District of Texas
                cannot reasonably be described as seeking "very limited
                information." .........................................................................................................2

        B.      Defendants have refused to provide Vignette with the same
                protection for confidential information that they have secured for
                themselves in the underlying litigation. ...............................................................3

        C.      The subpoena issued out of this Court and Defendants' motion to
                compel seek information that is protected by the order entered in the
                Western District of Texas. ....................................................................................4

        D.      Vignette sold the patent to SBJ in an arm's length transaction and is a
                third party to the underlying litigation. ................................................................4

III.    ARGUMENT & AUTHORITIES ...................................................................................5

        A.      Defendants' attempt to circumvent Judge Sparks's order should not
                be rewarded. ..........................................................................................................5

        B.      The essence of Defendants' request is that Vignette provide
                information regarding its customers' website systems, not
                information regarding StoryServer. .......................................................................7

        C.      Defendants purport to need the confidential information of third
                parties when Vignette's proffered source code would resolve the
                issues relevant to claims and defenses as Defendants have defined
                them.........................................................................................................................8

        D.      Defendants seek to impose undue burden on Vignette at the same
                time they refuse to afford Vignette the protections they have secured
                for themselves. ....................................................................................................10

IV.     CONCLUSION.............................................................................................................12

CERTIFICATE OF SERVICE ...............................................................................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Exxon Shipping Co. v. U.S. Dep't of Interior,*
   34 F.3d 774 (9th Cir. 1994) ......................................................................................10

*Katz v. Batavia Mar. & Sporting Sup.,*
   984 F.2d 422 (Fed. Cir. 1993)..................................................................................10

*Pac. Bell Internet Svcs. v. Recording Indus. Assoc. of Am., Inc.,*
   No. C03-3560 SI, 2003 WL 22862662 (N.D. Cal. 2003)........................................6

STATUTES

35 U.S.C. § 102(b) ....................................................................................................9, 10

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Not satisfied with the outcome of its prior attempts to compel discovery of essentially the same subject matter in another Federal District, Defendants have engaged in blatant forum shopping in this third-party discovery matter. Defendants' most recent subpoena and motion to compel seek the production of information regarding the "implementation" of Vignette's software product, known as StoryServer. Although the current request covers a longer period of time, it is otherwise identical to Defendants' previous subpoena for information regarding the "implementation" of StoryServer, issued out of the Western District of Texas.

The Western District granted Vignette's motion for protection from overly broad requests for confidential information, including the request for information regarding the implementation of StoryServer. Vignette then conferred with Defendants in good faith, produced hundreds of pages of documents, and executable software for every version of StoryServer and derivatives thereof. Vignette has offered to produce source code for several versions of StoryServer, but has not yet done so because Defendants refuse to be bound by the same prosecution bar that applies unilaterally to Plaintiff SBJ in the underlying litigation.

Defendants have never sought any relief from the Western District of Texas in regard to Vignette's production. Rather, they waited until that Court dismissed the cause, then issued a new subpoena out of this Court and filed a motion to compel, apparently hoping for more favorable treatment than they received from the Texas court. Defendants' request regarding the implementation of StoryServer extends well beyond Vignette's proprietary and/or confidential information and actually seeks information regarding website systems owned and operated by third parties. This confidential information of other third parties is not relevant to any claim or defense in the underlying lawsuit and imposes undue burden on Vignette.

For these reasons, Defendants' subpoena should be quashed and motion to compel denied. In the alternative, Vignette requests that this Court transfer this cause to the Western District of Texas, Austin Division to discourage forum shopping and conserve judicial resources.

## II.    STATEMENT OF RELEVANT FACTS

### A.    The original subpoena issuing from the Western District of Texas cannot reasonably be described as seeking "very limited information."

Defendants attempt to distinguish the subpoena issued out of the Western District of Texas on August 28, 2008 as seeking "very limited information." Defs' Mtn. at 4. In fact, that subpoena contained five requests, one of which sought the same information at issue in this proceeding:

> **All documents relating to the** research, design, development, **implementation**, operation, evaluation, or testing **of STORYSERVER** or the PATENT SUBJECT MATTER **prior to December 5, 1998**, including but not limited to specifications, user manuals, programmer guides, demonstrations, application notes, operating handbooks, operating instructions, datasheets, diagrams, schematics, software, firmware, source code, object code, executable code, software language references, test plans, test procedures, test results, test documents, documents related to shared development projects, press releases, product roadmaps, white papers, marketing collateral, and related communications such as email and memoranda.

August 28, 2007 subpoena, at 5, ¶1, attached as Exhibit A. That request also defined Patent Subject Matter as "any method, program(s), application, use, product, or code for displaying pre-customized content associated with user visitor data." *Id.* at 2, ¶G. The scope of this request was clearly much broader than information related to the "technical details of StoryServer." Defs' Mtn. at 4.

In fact, the Western District of Texas granted Vignette's motion for protection from such overly broad requests and ordered that the parties "confer on the scope of the subpoena requests within 10 days and limit the scope of the requests to matters which are relevant to the

1    underlying suit and which do not create an undue burden on Third Party Vignette." Court Order

2    filed August 31, 2007, attached as Exhibit B.

3            The parties reached agreement on the production of relevant information, which

4    was memorialized in an agreed order. Court Order filed October 4, 2007, attached as Exhibit C.

5    Vignette complied with that order by producing the due diligence files relating to the transfer of

6    the patent in suit, executable copies of every version of StoryServer and derivatives thereof with

7

8    product documentation, an affidavit executed by Vignette's Senior Vice President and Chief

9    Technology Officer, agreements with third parties that provide personalization, caching,

10   collaborative filtering, content labeling, and/or similar functionality, and communications with

11   SBJ regarding the underlying litigation. Correspondence from S. Ayers to R. Tyz, attached as

12
     Exhibit D; Sept. 2007 Affidavit of Conleth S. O'Connell, Jr., attached as Exhibit E.
13

14           In January 2008, Judge Sparks of the Western District of Texas, Austin Division,

15   issued an order that counsel show cause why the case should not be closed and dismissed. Order

16   filed Jan. 10, 2008, attached as Exhibit F. When Defendants failed to respond, Judge Sparks

17   dismissed the case without prejudice. Order filed Feb. 7, 2008, attached as Exhibit G. Defendants

18   have never sought any relief from the Western District in regard to their subpoena or Vignette's
19
     production of documents and things.
20
         **B.    Defendants have refused to provide Vignette with the same protection for**
21            **confidential information that they have secured for themselves in the**
              **underlying litigation.**
22

23           The underlying patent litigation is pending in the Eastern District of Texas. That

24   court has entered an Interim Protective Order. Interim Protective Order, signed Oct. 11, 2007,

25   attached as Exhibit H. That order contains a prosecution bar that applies unilaterally to SBJ. It

26   does not contain any comparable prosecution bar applicable to Defendants. *Id.* at 11.

27           The Western District of Texas ordered the parties to confer on the proper
28

---

VIGNETTE CORP.'S RESPONSE TO MOTION TO            3              CASE NO. 3:08-MC-80109 SI
COMPEL

protection for Vignette's confidential information. Ex. B. Vignette has offered to produce source code for four versions of StoryServer conditioned on the entry of a protective order by the Western District of Texas. Vignette has proposed that that parties modify the Interim Protective Order so that the prosecution bar applies equally to Defendants. June 18, 2008 correspondence from S. Ayers to R. Tyz, attached as Exhibit I. Defendants object to the entry of any order that would impose a prosecution bar on persons who review Vignette's confidential information, such as source code. Therefore, no such order has been entered by any court and Vignette has not produced its source code. Defendants have not sought any relief from the Western District of Texas in this regard.

**C.    The subpoena issued out of this Court and Defendants' motion to compel seek information that is protected by the order entered in the Western District of Texas.**

At issue are Defendants' May 2008 subpoena issuing from this Court and Defendants' motion to compel the production of "All documents relating to the implementation and/or incorporation of STORYSERVER versions 3.1, 3.2, 4.0 or 4.1 in any user or customer websites on or before December 11, 2001." May 13, 2008 subpoena, at 5, ¶6, attached as Exhibit J. This request covers a three-year period from December 1998 through December 2001 that was not included in Defendants' first subpoena issued out of the Western District of Texas. However both subpoenas contain the same substantive request for all documents relating to the "implementation" of StoryServer.

**D.    Vignette sold the patent to SBJ in an arm's length transaction and is a third party to the underlying litigation.**

In January 2007, in an arm's length transaction, Vignette sold the '592 patent to SBJ IP Holdings 1, LLC. July 2008 Affidavit of Conleth S. O'Connell, attached as Ex. K, at ¶8; Patent Purchase Agreement, attached as Ex. 2 to Defs' Mtn. The Purchase Price of the Patent included an initial cash payment and contingent cash payment. Ex. K, at ¶9; Pat. Purch. Agr., at

VIG00002, ¶¶ 2.1, 2.2.  Vignette retained a percentage interest in any future "monetization" event, such as the subsequent re-sale of the patent, or a judgment.  Ex. K, at ¶10; Pat. Purch. Agr., at ¶2.2.  Vignette's financial interest in the underlying litigation is simply a pricing mechanism that does not alter Vignette's status, factually or legally, vis-à-vis the underlying litigation.

Vignette and SBJ are not related entities, and do not share employees, capital, or ownership of any property.  Ex. K, at ¶11.  Vignette is not a party to the underlying patent infringement suit pending in the Eastern District of Texas between SBJ and Defendants. Moreover, Vignette is not collaborating with SBJ in its prosecution of that case.  *Id.* at ¶12.  In fact, SBJ has served Vignette with a third party subpoena, issued out of the Western District of Texas.  *Id.* at ¶13; SBJ Subpoena, attached as Exhibit L.  Vignette has not been represented by SBJ's counsel in either the Western District of Texas or this Court in regard to the third-party discovery disputes with Defendants.  Ex. K at ¶14.

Defendants do not cite any evidence or legal authority to support the inference that Vignette is not a disinterested third party that should be afforded the same protections against overly broad and unduly burdensome discovery as any other third party.

## III.    ARGUMENT & AUTHORITIES

### A.    Defendants' attempt to circumvent Judge Sparks's order should not be rewarded.

Defendants elected to issue their original third-party subpoena to Vignette out of the Western District of Texas, Austin Division, in which Vignette has its corporate headquarters and all information sought and produced to Defendants resides.  Ex. A.  That subpoena contained the same substantive request at issue here, except that it covered a shorter period of time. *Compare* Ex. A, at 5, ¶1, *with* Ex. J, at 5, ¶6.  Therefore, The Honorable Sam Sparks, of the Western District of Texas, has already considered the discovery request that forms the basis of

this action and has granted Vignette protection from it. *See* Ex. B. Defendants did not file a motion for rehearing, show cause, or seek any relief from Judge Sparks in regard to the request for information about the implementation of StoryServer. Defendants have not articulated any argument that Vignette's California office has any relationship to the underlying suit or is in possession of any relevant information; nor have they attempted to demonstrate that this Court is a superior venue for enforcing or amending Judge Sparks's order.

This court has previously dismissed a declaratory judgment action in order to discourage forum shopping in subpoena matters. *See Pac. Bell Internet Svcs. v. Recording Indus. Assoc. of Am., Inc.*, No. C03-3560 SI, 2003 WL 22862662 (N.D. Cal. 2003). The RIAA obtained discovery subpoenas against PBIS and filed a motion to enforce those subpoenas in the District Court for the District of Columbia. *Id.* at *6. PBIS responded by filing a declaratory judgment action in the Northern District of California, raising constitutional challenges to the subpoenas. *Id.* This Court abstained from considering the merits of PBIS's action and transferred the case to the District of Columbia: "Consideration on the merits of PBIS's Complaint for Declaratory Relief, founded on objections to subpoenas issued by the District Court for the District of Columbia, would encourage forum shopping in subpoena matters and would create duplicative litigation." *Id.*

The facts of this case are even more compelling. In *Pacific Bell*, the District of Columbia court had not yet issued an order on RIAA's motion to enforce its subpoenas. To the contrary, Judge Sparks found that Defendants' original subpoena – which included the same request at issue in Defendants' motion to compel – was overly broad, contained requests for irrelevant material, created an undue burden, and sought Vignette's confidential information. *See* Ex. B.

At the time the Western District ordered the parties to show cause, Defendants had an outstanding request for information regarding implementation, the parties had not reached any agreement regarding that request, and Vignette had not produced any materials responsive to that request. Given the opportunity to show cause, Defendants declined to seek any relief from Judge Sparks and the Western District case was dismissed without prejudice. Exs. F & G.

Despite that dismissal, the parties continued to confer, Vignette produced additional materials and reurged offers to produce source code. *See* Ex. D. Although the parties have complied with Judge Sparks's order to discuss the proper protection of Vignette's confidential information, Defendants have refused to be bound by the same terms for protection that they have imposed on SBJ in the underlying litigation. *See* Exs. H & I. In particular, the Defendants object to the entry of any prosecution bar applicable to them.

In order to discourage forum shopping in subpoena matters and to avoid duplicative litigation, Vignette asks this Court to grant its motion to quash. If Defendants wish to compel the production of information regarding the implementation of StoryServer, the Western District of Texas, which previously issued an order protecting Vignette from that very same request, is the proper venue for that dispute.

**B.    The essence of Defendants' request is that Vignette provide information regarding its customers' website systems, not information regarding StoryServer.**

Defendants seek to compel the production of any information that Vignette possesses regarding "Vignette customers' website system[s]" into which StoryServer was implemented. Defs' Mtn. at 6. This is not a request for information regarding Vignette's StoryServer software, the patented subject matter, the patent in suit, or even prior art. Rather it is a fishing expedition for documents that Vignette may possess about other third parties' confidential and proprietary information that Defendants speculate may constitute "prior art

systems." *Id.* Defendants cite absolutely no legal authority for compelling one third party to produce the confidential information of other third parties' because it "**may** constitute, alone or in combination, or disclose, material prior art." *Id.*

Defendants assert that they have learned of Vignette's collaborations with companies such as CNET, Net Perceptions, and Firefly and imply that this is a basis for compelling the production of information regarding every implementation of StoryServer into every Vignette customer's website before December 11, 2001. *Id.* at 6-7. First, Defendants learned of these collaborations through documents produced by Vignette in response to narrowly-tailored requests that identified specific companies of interest to Defendants. Feb. 28, 2008 correspondence from S. Ayers to R. Tyz, attached as Exhibit D. By contrast, the request at issue here seeks information regarding more than one thousand unidentified customers based on Defendants' rank speculation regarding the possible content of those customers' web sites. *See* Ex. K, at ¶16.

Second, Defendants have not identified any specific information they learned about Vignette's collaborations with CNET or other companies that reasonably indicates the existence of prior art or inequitable conduct. The complete absence of such evidence in the documents produced thus far by Vignette does not justify the production of other information on a much larger scale regarding every customer that licensed StoryServer for as many as five years.

**C.**    **Defendants purport to need the confidential information of third parties when Vignette's proffered source code would resolve the issues relevant to claims and defenses as Defendants have defined them.**

Defendants' motion describes the issues relevant to claims and defenses in the underlying suit in regard to Vignette's StoryServer software as (1) whether versions on sale prior to the critical date embodied the patented invention, (2) whether versions on sale after the critical date also embodied the patented invention, and (3) if these later versions did not embody the

patented invention, how their implementation provided comparable functionality. Defs' Mtn., at 3. Up to the date of this response, Defendants have been unable to articulate any reasonable basis for needing the confidential information of other third parties regarding the content of their websites as it relates to these issues. Vignette's previous production, and conditional offer to produce StoryServer source code, render Defendants' current request cumulative and completely unnecessary.

In response to two subpoenas, Vignette has produced the due diligence files relating to the transfer of the patent in suit, executable copies of every version of StoryServer and derivatives thereof with hundreds of pages of product documentation, an affidavit executed by Vignette's Senior Vice President and Chief Technology Officer, agreements with third parties, and all communications with SBJ regarding the underlying litigation. Ex. D. Vignette has not previously withheld a single document as privileged or confidential. If Defendants would agree to the application of a reciprocal prosecution bar, Vignette would produce its source code for the four versions of StoryServer identified by Defendants and the relevant questions regarding which versions embodied the patented invention or provided comparable functionality would be answered – without resort to a burdensome and expensive search for Vignette's customers' confidential information. *See* Ex. I.

Moreover, Defendants have failed to consistently articulate the time period for which they seek third parties' confidential information or to cite any legal authority that supports a request for any particular time period. Defendants' original subpoena requested information regarding implementation "prior to December 5, 1998." Ex. A at 5, ¶1. The current subpoena requests the same information "on or before December 11, 2001." Ex. J at 5, ¶6. Defendants refer to the "section 102(b)" critical date throughout their motion, but never identify that date, which is "more than one year prior to the date of the application for patent in the United States."

35 U.S.C. § 102(b). The application for the '592 patent was filed on December 5, 1998. United States Patent, at SBJ 00005, attached as Exhibit M. Therefore, the 102(b) critical date is December 5, 1997. Defendants offer no explanation for requesting information after this date. *Compare* Defs' Mtn. at 4 (Defendants seek information regarding implementation <u>before issuance</u> of the '592 patent on Dec. 11, 2001) *with* Defs' Mtn. at 5 (issue is whether Vignette must produce information known to others <u>more</u> <u>than</u> <u>one</u> <u>year</u> <u>before</u> <u>filing</u> <u>date</u> of the patent-in-suit, which is Dec. 5, 1997).

Because Defendants seek information that is not relevant in terms of substance or time period to the claims and defenses in the underlying litigation, as defined by Defendants in their motion, their subpoena should be quashed and motion to compel denied. In the alternative, Vignette requests that this cause be transferred to the Western District of Texas, Austin Division.

**D.    Defendants seek to impose undue burden on Vignette at the same time they refuse to afford Vignette the protections they have secured for themselves.**

Defendants assert that this Court's local rules mandate the disclosure of the information sought from Vignette regarding implementation of StoryServer. Defs' Mtn. at 8. To the contrary, the local rules apply to disclosures by parties, such as SBJ, claiming patent infringement. Pat. L.R. 3-1 ("Not later than 10 days after the Initial Case Management Conference, a party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'"). Vignette is not a party to the underlying patent infringement case pending in the Eastern District of Texas, is unrelated to SBJ, and is not participating informally with SBJ's prosecution of its lawsuit. Ex. K, at ¶¶11, 12. Vignette's nonparty status should be considered in weighing the burdens imposed by Defendants' requests. *See Katz v. Batavia Mar. & Sporting Sup.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (nonparties are afforded "special protection against the time and expense of complying with subpoenas"). Defendants have not

offered any evidence or legal authority to the contrary.

Defendants' request actually seeks to compel the production of the confidential information of third parties. Ex. K, at ¶15. The information that Defendants' seek relates to as many as 1,057 Vignette customers who licensed StoryServer prior to December 11, 2001. *Id.* at ¶16. Any information in Vignette's possession regarding these customers' website systems or products is subject to confidentiality obligations within non-disclosure and master agreements that prohibit Vignette from producing such information without first notifying the customer. *Id.* at ¶17. Vignette must provide each customer with the opportunity to object to the request and to seek adequate protection of their confidential information if its production is compelled. *Id.* at ¶18. Furthermore, this information is now more than six years old and does not reside in one centralized location. *Id.* at ¶19. It would take no less than 1,600 hours to determine whether and where all such information has been archived by Vignette, if it has been retained at all. *Id.* at ¶20. Conservatively, it would take another 280 hours to produce the information found after a diligent search. *Id.* at ¶21. These estimates do not account for the time that Vignette's professional services personnel – those who actually carried out the implementation of StoryServer at customer sites – would have to devote to searching for relevant information and responding to requests from Vignette's legal department. *Id.* at ¶22.

It is probable that Defendants' review of Vignette's source code would obviate the need for some or all of the information Defendants seek regarding the implementation of StoryServer in all customers' websites. But because Defendants have refused to submit to the application of any prosecution bar against them, Vignette's source code has not been produced or reviewed.

If Defendants suspect that other third parties possess information regarding prior art, in the form of websites or otherwise, Defendants are free to propound discovery on them and

to negotiate with each one regarding the means by which their confidential information will be safeguarded or to seek individual court orders for the production of such information. Defendants should not be permitted to shift this substantial burden onto Vignette.

## IV.    CONCLUSION

For these reasons, Vignette asks the Court to grant its motion to quash and to deny Defendants' motion to compel. In the alternative, Vignette asks this Court to transfer this cause to the District Court for the Western District of Texas, Austin Division.


DATED:  July 25, 2008                              BAKER BOTTS L.L.P.


By: /s/ Susan Dillon Ayers
　　　Susan Dillon Ayers  (*pro hac vice*)
　　　98 San Jacinto Boulevard
　　　1500 San Jacinto Center
　　　Austin, Texas  78701
　　　Telephone:  (512) 322-2500
　　　Facsimile:  (512) 322-2501
　　　sue.ayers@bakerbotts.com

　　　MARK SPOLYAR (#187673)
　　　BAKER BOTTS L.L.P.
　　　620 Hansen Way
　　　Palo Alto, California 94304
　　　Telephone: (650) 739-7500
　　　Facsimile:  (650) 739-7699
　　　mark.spolyar@bakerbotts.com
　　　Attorneys for Third Party
　　　VIGNETTE CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true, correct and complete copy of the foregoing instrument was served on the following persons on the 25th day of July, 2008 by ECF/CM and email:

Ryan A. Tyz
FENWICK & WEST
Silicon Valley Center
801 California Street
Mountain Valley, CA 94041
rtyz@fenwick.com

Eric Manchin
KAESKE LAW FIRM
1301 West 25th Street
Suite 406
Austin, TX 78705
emanchin@kaeskelaw.com

Eric M. Albritten
ALBRITTEN LAWFIRM
P.O. Box 2649
Longview, Texas 75606-2649
ema@emafirm.com

Blake C. Erskine
ERSKINE AND MCMAHON, L.L.P.
521 N. Second Street
P.O. Box 3485
Longview, Texas 75606
blakee@erskine-mcmahon.com

/s/ Susan Dillon Ayers
Susan Dillon Ayers

# EXHIBIT A

DELIVERED THIS 8th DAY OF 8/07

BY _Mike Gallo_ SCH-1630

PROFESSIONAL CIVIL PROCESS

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

Western    DISTRICT OF Texas

SBJ HOLDINGS 1, LLC

**SUBPOENA IN A CIVIL CASE**

V.

NETFLIX, INC., AMAZON.COM, INC.
BARNESANDNOBLE.COM, LLC, and BORDERS
GROUP, INC.

Case Number: 2:07-CV-120-TJW
(U.S.D.C. Eastern - Texas)

TO: Vignette Corporation
1301 S. MoPac Expressway #100
Austin, TX 78746-6347

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Vignette Corporation | August 28, 2007 |
| 1301 S. MoPac Expressway #100 | |
| Austin, TX 78746-6347 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| ATTORNEY FOR DEFENDANT, INC.-AMAZON.COM, INC. | August 7, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Mike C. Perkins, Evans & Kelton, LLP, P.O. Box 3488, Longview, Texas 75606
(903) 757-8435

AO88

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME)                         MANNER OF SERVICE

SERVED BY (PRINT NAME)                         TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                     SIGNATURE OF SERVER

                                                 _____
                                                 ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

1
2

## ATTACHMENT A TO SUBPOENA TO VIGNETTE CORPORATION

## DEFINITIONS

3      A.    "VIGNETTE," "YOU" and "YOUR" as used herein, means Vignette Corporation

4 and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

5 entities of VIGNETTE, any and all predecessors and successors thereof, and any entities acting or

6 purporting to act for or on behalf of, or who are subject to the direction or control of, any of the

7 foregoing entities, including agents, employees, officers, directors, attorneys, consultants,

8 contractors, subcontractors and representatives.

9      B.    "SBJ" as used herein, means the named plaintiff SBJ HOLDINGS 1, LLC, and

10 any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of

11 SBJ, any and all predecessors and successors thereof, and any entities acting or purporting to act

12 for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities,

13 including agents, employees, officers, directors, attorneys, consultants, contractors,

14 subcontractors and representatives.

15      C.    "NETFLIX" as used herein, means one of the named defendants Netflix, Inc., and

16 any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of

17 NETFLIX, any and all predecessors and successors thereof, and any entities acting or purporting

18 to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing

19 entities, including agents, employees, officers, directors, attorneys, consultants, contractors,

20 subcontractors and representatives.

21      D.    "AMAZON" as used herein, means one of the named defendants Amazon.com,

22 Inc., and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

23 entities of AMAZON, any and all predecessors and successors thereof, and any entities acting or

24 purporting to act for or on behalf of, or who are subject to the direction or control of, any of the

25 foregoing entities, including agents, employees, officers, directors, attorneys, consultants,

26 contractors, subcontractors and representatives.

27      E.    "BORDERS" as used herein, means one of the named defendants Borders Group,

28

ATTACHMENT A TO SUBPOENA TO
VIGNETTE

Civil Action No.   2:07-cv-120-TJW

- 1 -

1  Inc., any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

2  entities of BORDERS, any and all predecessors and successors thereof, and any entities acting or

3  purporting to act for or on behalf of, or who are subject to the direction or control of, any of the

4  foregoing entities, including agents, employees, officers, directors, attorneys, consultants,

5  contractors, subcontractors and representatives.

6       F.     "PATENT-IN-SUIT" as used herein, means U.S. Patent No. 6,330,592, titled

7  "Method, Memory, Product, and Code for Displaying Pre-Customized Content Associated with

8  Visitor Data," dated December 11, 2001.

9       G.     "PATENT SUBJECT MATTER" as used herein, means any method, program(s),

10  application, use, product, or code for displaying pre-customized content associated with user

11  visitor data.

12       H.     "INVENTORS" as used herein, means the inventors listed on the PATENT-IN-

13  SUIT, Michael K. Makuch and Neil Webber.

14       I.     "STORYSERVER" as used herein means YOUR STORYSERVER software

15  product, including all versions and derivatives thereof.

16       J.     "Documents" shall mean the original and all non-identical copies of any written,

17  typed, printed, photocopied, photographic, machine-readable, magnetically or optically recorded

18  matter of any kind, or electronically stored information, including, but not limited to, letters,

19  envelopes, forms, affidavits, correspondence, telegraphs, telecopies, telefaxes, paper

20  communications, electronic communications, signed statements, tabulations, charts, memoranda,

21  checks, appointment books, records, proposals, memoranda or other transcriptions by mechanical

22  device, by longhand or shorthand recording, tape recorded or by electronic or any other means,

23  computer-generated information, computer software, computer programs, computer code, intra-

24  office communications, interoffice communications, all summaries of oral communications,

25  telephonic or otherwise, microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads,

26  opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets,

27  telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers,

28  studies, summaries, worksheets, telexes, cables and all other graphic materials, writings and

ATTACHMENT A TO SUBPOENA TO VIGNETTE       Civil Action No.       2:07-cv-120-TJW

1    instruments, however produced or reproduced. A document includes all documents appended

2    thereto.

3        K.    "Communications" shall refer to all written, oral, telephonic or other inquiries,

4    dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations,

5    agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-

6    mail and all other documents evidencing any verbal or nonverbal interaction between persons and

7    entities.

8        L.    The terms "relating to" or "relate to" shall mean concerning, showing,

9    demonstrating, comprising, citing, quoting, regarding, involving, representing, evidencing,

10    constituting, discussing, mentioning, containing, analyzing, supporting, embodying, reflecting,

11    identifying, incorporating, describing, commenting on, referring to, considering, recommending,

12    dealing with or pertaining to in whole or in part.

13        M.    The terms "or" and "and" shall be read in the conjunctive and in the disjunctive

14    wherever they appear, and neither of these words shall be interpreted to limit the scope of these

15    Requests.

16        N.    The singular form of any word shall be deemed to include the plural. The plural

17    form of any word shall be deemed to include the singular.

18        O.    The term "this ACTION" shall refer to *SBJ Holdings 1, LLC v. Netflix, Inc., et*

19    *al.*, United States District Court, Eastern District of Texas, Civil Action No. 2:07-cv-120-TJW.

20                          **INSTRUCTIONS**

21        A.    In responding to the following requests, furnish all available documents, including

22    documents in the possession, custody, or control of any of YOUR directors, officers, agents,

23    employees, representatives, associates, investigators or division affiliates, partnerships, parents or

24    subsidiaries, and persons under YOUR control, as well as documents which YOU have a legal

25    right to obtain, not merely documents in the direct possession of VIGNETTE. If you cannot fully

26    respond to the following requests after exercising due diligence to secure the documents

27    requested thereby, so state, and specify the portion of each request that cannot be responded to

28    fully and completely. In the latter event, state what efforts were made to obtain the requested

ATTACHMENT A TO SUBPOENA TO
VIGNETTE    Civil Action No.    2:07-cv-120-TJW

- 3 -

1  documents.

2      B.      If YOU object to any portion of any request for production of documents, please

3  provide all documents responsive to the portion of the request to which it does not object as soon

4  as possible.

5      C.      Electronic records and computerized information must be produced in native

6  format, together with a description of the system from which they were derived sufficient to

7  permit rendering the records and information intelligible.

8      D.      Selection of documents from the files and other sources and the numbering of such

9  documents shall be performed in such a manner as to ensure that the source of each document

10  may be determined, if necessary.

11      E.      File folders with tabs or labels or directories of files identifying documents called

12  for by these requests must be produced intact with such documents.

13      F.      Documents attached to each other shall not be separated.

14      G.      If YOU assert that certain documents or things are privileged, please identify:

15          1.      The nature of the privilege;

16          2.      The author(s) of the documents;

17          3.      All recipients of the documents;

18          4.      The date the document was created;

19          5.      The subject matter to which the document pertains; and

20          6.      All persons with access to the documents.

21      H.      The requests contained herein are intended to be continuing in nature so as to

22  require supplementation promptly following the discovery of additional responsive information.

23      I.      If any request is unclear or ambiguous, please do not delay, but contact counsel for

24  Netflix, Amazon, and Borders, immediately for clarification.

25      J.      If YOU consider any documents that YOU are producing to be confidential or

26  highly confidential, please designate them accordingly and such documents will be handled

27  pursuant Patent Local Rule 2-2 of the Eastern District of Texas until entry of a Protective Order.

28

ATTACHMENT A TO SUBPOENA TO                    Civil Action No.      2:07-cv-120-TJW
VIGNETTE
                                    -4-

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.    All documents relating to the research, design, development, implementation, operation, evaluation, or testing of STORYSERVER or the PATENT SUBJECT MATTER prior to December 5, 1998, including but not limited to specifications, user manuals, programmer guides, demonstrations, application notes, operating handbooks, operating instructions, datasheets, diagrams, schematics, software, firmware, source code, object code, executable code, software language references, test plans, test procedures, test results, test documents, documents related to shared development projects, press releases, product roadmaps, white papers, marketing collateral, and related communications such as email and memoranda.

2.    Documents sufficient to evidence each discussion with, or disclosure to, or other manner of providing to a third party, or sale/license of, offer to sell/license, or other prospective or actual commercialization of, the STORYSERVER product or the PATENT SUBJECT MATTER prior to December 5, 1998, including but not limited to contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta testing agreements, and third party or joint development agreements.

3.    All documents and communications relating to the PATENT-IN-SUIT, including but not limited to patent applications, opinions, summaries, descriptions, analysis, notes, notebooks, valuations, drafts, prior art searches, assignments, mortgages, transfers, agreements, licenses, or offers to license.

4.    All documents and communications referring or relating to SBJ, NETFLIX, AMAZON or BORDERS.

5.    All documents and communications relating to this ACTION, including but not limited documents relating to YOUR interest in this ACTION.

ATTACHMENT A TO SUBPOENA TO VIGNETTE

Civil Action No.    2:07-cv-120-TJW

- 5 -

# EXHIBIT B

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2007 AUG 31 AM 9: 13

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SBJ HOLDINGS 1, LLC | § | |
| | § | |
| V. | § | Case Number: A07 ___ 729 SS |
| | § | |
| NETFLIX, INC., AMAZON.COM, INC., | § | (U.S.D.C. - Eastern District of Texas) |
| and BORDERS GROUP, INC. | § | |

## ORDER

The Court has considered Third Party Vignette Corporation's Motion for Protection and to Modify Subpoena Issued by Defendants Pursuant to Rule 45c and hereby ORDERS that such motion is granted.

The Court also ORDERS that the deadline for compliance with the subpoena served on Vignette be extended to September 28, 2007.

The Court also ORDERS that Vignette and Defendants confer on the scope of the subpoena requests within 10 days and limit the scope of the requests to matters which are relevant to the underlying suit and which do not create an undue burden on Third Party Vignette. The parties are also ORDERED to confer on the proper protection of Vignette's confidential information. The parties are ORDERED to report back to the Court by September 7, 2007 and advise the Court whether an agreement has been reached.

_Sam Sparks_
JUDGE PRESIDING
_August 29, 2007_

# EXHIBIT C

FILED

IN THE UNITED STATES DISTRICT COURT  2007 OCT -4  PM 12: 11
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

SBJ HOLDINGS 1, LLC,                          §
                                              §
        Plaintiff                             §
                                              §
                                              §
vs.                                           §     Case No:  1:07-mc-000729-SS
                                              §
NETFLIX, INC., AMAZON.COM, INC.,              §
and BORDERS GROUP, INC.,                      §
                                              §
        Defendants.                           §

---

## ORDER ON MOTION REGARDING DEFENDANTS' SUBPOENA
## TO THIRD PARTY VIGNETTE CORPORATION

---

Pending before the Court is the Defendants' Netflix, Inc., Amazon.com,

Inc., and Borders Group, Inc. ("Defendants"), and third-party Vignette Corporation

("Vignette") Stipulation and Motion for Entry of Order concerning Defendants'

Subpoena to Vignette. In consideration of this joint stipulation it is **ORDERED** that

On or before September 28, 2007, Vignette shall produce to Defendants, for

each Story Server version sold or developed, in whole or part, prior to December 5, 1998,

an executable copy of the software, the product documentation (e.g. user manuals or

programmer guides) associated with the software, and any documentation (e.g. functional

or feature specifications) reflecting the development history of the Patent Subject Matter;

On or before September 28, 2007, Vignette shall produce to Defendants in

writing, for each Story Server version sold or developed, in whole or part, prior to

December 5, 1998, the date of first beta release, the date of first product announcement, the date of first sale, license, or offer to sell or license, and all documentation relied upon to draft its written responses.

On or before September 28, 2007, Vignette shall produce all the due diligence files relating to the transfer of the Patent-in-Suit.

Defendants and Vignette shall meet and confer in good faith regarding the additional documents sought by the subpoena, including but not limited to the source code for each Story Server version sold or developed, in whole or part, prior to December 5, 1998.

All information produced by Vignette to Defendants in response to the subpoena shall be afforded the protections in Eastern District of Texas Patent Rule 2-2, until a protective order is entered by the Eastern District of Texas in the underlying lawsuit, Cause no. 2:07-cv-00120-TJW, at which time Vignette shall be afforded all of the protections contained therein. However, Vignette shall have the right to object to the terms and negotiate additional or different terms if it reasonably believes that the protective order does not afford adequate safeguards for its confidential or proprietary information and documents.

Defendants shall meet and confer with Vignette in good faith regarding any additional protections sought by Vignette following the entry of a protective order in the underlying litigation. In the event the parties cannot reach agreement to the terms of a protective order, any dispute will be submitted to this Court for resolution in Cause no. 1:07-mc-000729-SS.

Nothing in this Stipulation shall affect either Defendants' or Vignette's right to seek or object, respectively, to the production of additional information pursuant to the Subpoena.

_____

U.S. DISTRICT COURT JUDGE

*October 3, 2007*

# EXHIBIT D

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL +1 512.322.2500
FAX +1 512.322.2501
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

September 20, 2007

VIGNETTE CORPORATION
NetFlix/Amazon Subpoena
068422.0106

Susan Dillon Ayers
TEL +1 512.322.2663
FAX +1 512.322.8390
sue.ayers@bakerbotts.com

BY ELECTRONIC MAIL

Ryan A. Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041

Re:     *SBJ Holdings 1, LLC v. Netflix, et al.*; Cause No. A07-mc-00729-SS; In the U.S.
         District Court for the Western District of Texas, Austin Division

Dear Ryan:

         I am in receipt of your September 6, 2007 letter regarding the documents you seek
in order to prepare defendants' invalidity contentions in the above referenced case. Vignette will
produce the following information and documents no later than September 28, 2007.

## Request No. 1

         For each Story Server version sold or developed, in whole or in part, prior to
December 5, 1998, Vignette shall produce

- An executable copy of the software;

- The product documentation (e.g. user manuals or programmer guides)
  associated with the software; and

- Any documentation (e.g. functional or feature specifications) reflecting the
  development history of the Patent Subject Matter.

## Request No. 2

         For each Story Server version sold or developed, in whole or part, prior to
December 5, 1998, Vignette shall provide in writing the date of:

- First beta release;

- First product announcement; and

**BAKER BOTTS** LLP

Ryan A. Tyz                                    - 2 -                          September 20, 2007

> • First sale, license, or offer to sell or license.

Vignette shall also produce all documentation relied upon to draft its written response to this request.

### Request No. 3

> • Vignette shall produce the due diligence files relating to the transfer of the patent-in-suit.

Vignette's agreement to provide this discovery is not a waiver of the right to assert its objections to the subpoena. Vignette expressly reserves the right to object to any requests and to object to the production of any information or documents that are not addressed by this letter.

Sincerely,

Susan Dillon Ayers

SDA:sda

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL  +1 512.322.2500
FAX  +1 512.322.2501
www.bakerbotts.com

**AUSTIN**
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

September 24, 2007

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX  +1 512.322.8390
sue.ayers@bakerbotts.com

068422.0106

BY FEDERAL EXPRESS

Ryan A. Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041

<div style="margin-left:2em">

Re:     Cause No. A07-MC-00729-SS; *SBJ Holdings 1, LLC v. Netflix, et al.*; In the U.S.
District Court for the Western District of Texas, Austin Division

</div>

Dear Ryan:

Enclosed please find responsive documents to request number 3 that are bates labeled VIG00001 – VIG00497.

Should you have any questions, please contact me.

Sincerely,

Susan Dillon Ayers

SDA:bjm

Enclosures

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL  +1 512.322.2500
FAX  +1 512.322.2501
www.bakerbotts.com

**AUSTIN**
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

October 5, 2007

068422.0106

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX  +1 512.322.8390
sue.ayers@bakerbotts.com

BY FEDERAL EXPRESS

Ryan A. Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:    Cause No. A07-MC-00729-SS; *SBJ Holdings 1, LLC v. Netflix, et al.*; In the U.S.
        District Court for the Western District of Texas, Austin Division

Dear Ryan:

Enclosed is a CD containing a copy of Storyserver 4.0  Should you have any
questions, please contact me.

Sincerely,

Susan Dillon Ayers

SDA:mvd
Enclosure

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER      AUSTIN
98 SAN JACINTO BLVD.        BEIJING
AUSTIN, TEXAS               DALLAS
78701-4078                  DUBAI
                           HONG KONG
TEL  +1 512.322.2500        HOUSTON
FAX  +1 512.322.2501        LONDON
www.bakerbotts.com         MOSCOW
                           NEW YORK
                           RIYADH
                           WASHINGTON

February 28, 2008

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX  +1 512.322.8390
sue.ayers@bakerbotts.com

068422.0106

BY ELECTRONIC MAIL

Ryan A. Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041

Re:    Cause No. A07-MC-00729-SS; *SBJ Holdings 1, LLC v. Netflix, et al.*; In the U.S.
       District Court for the Western District of Texas, Austin Division

Dear Ryan:

In response to your request for additional documents and information, I provide the information below and enclosed documents.

You have requested documents relating to the incorporation of the patented subject matter in StoryServer, such as design specifications and market requirement documents. Vignette has already produced all responsive documents under its control. A diligent search of legacy systems was conducted and Vignette was unable to verify that such documents, aside from those already produced, were ever created. To the extent such documents ever existed, Vignette no longer has any record of them.

You have requested that Vignette produce the source code for versions 3.1 and 4.0 of StoryServer. Vignette has previously offered to produce this source code and make it available through the duration of your lawsuit at Iron Mountain, but you rejected this offer. Iron Mountain has facilities at 29555 Kouhoutek Way, Union City, California. If you decide to accept this offer, please contact me to discuss the details.

You have requested documents sufficient to corroborate the dates of conception and/or reduction to practice of each claim of the patent-in-suit, and the identity of the person(s) conceiving such claim. Vignette has previously produced any information responsive to this request. After conducting a diligent search of legacy systems and files, Vignette does not have any additional documents that are responsive to this request.

You have requested all Vignette's agreements with third parties that provide personalization, caching, collaborative filtering, content labeling, and/or similar functionality. You identified CNET[1], GroupLens[2], FireFly, and Aria[3] as examples of such third parties in

---

[1] All such agreements between CNET and Vignette are subject to confidentiality agreements; therefore, they will not be produced.

**BAKER BOTTS** LLP

Ryan A. Tyz                        - 2 -                        February 28, 2008

whom you are interested.  Vignette has identified and hereby produces all such documents with Net Perceptions, Inc., Firefly Network, Inc., Sageware, Inc., OnDisplay, Inc., and Andromedia, Inc.

You have requested documents referring to any analysis and/or operation of the Netflix, Amazon, or Borders websites for the purpose of developing the patent-in-suit, or developing claims of patent infringement against Defendants.  Vignette has conducted a diligent search and has found no responsive documents.  Vignette has been unable to locate any evidence that any analysis of Defendants' web sites was conducted for the purpose of analyzing their operation, developing the patent-in-suit, or developing the claims of patent infringement against Defendants.

You have requested all written communications exchanged with SBJ or its counsel relating to the underlying action.  Vignette hereby produces those documents that are responsive to this request.

Should you have any questions, please contact me.

Sincerely,

Susan Dillon Ayers

SDA:bjm

Enclosures

---

[2] GroupLens is not a third party; rather this is the product name for technology produced by Net Perceptions.
[3] Aria is not a third party; rather it is the product name for technology produced by Andromedia.

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL  +1 512.322.2500
FAX +1 512.322.2501
www.bakerbotts.com

**AUSTIN**
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

March 20, 2008

068422.0106

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX +1 512.322.8390
sue.ayers@bakerbotts.com

BY ELECTRONIC MAIL

Ryan A. Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041

Re:     Cause No. A07-MC-00729-SS; *SBJ Holdings 1, LLC v. Netflix, et al.*; In the U.S.
District Court for the Western District of Texas, Austin Division

Dear Ryan:

In response to our most recent phone call, I am providing the following documents relating to Net Perceptions, Inc. and CNET:

- February 3, 1998 Letter of Intent

- August 13, 1999 Mutual Nondisclosure Agreement

- April 1998 Software License Agreement

- August 1997 Trial Software License

- August 28, 1997 Trial Use Agreement

- February 16, 1996 Confidential Disclosure Agreement

- July 19, 1996 "Prism" Development and Marketing Agreement

Should you have any questions, please contact me.

Sincerely,

Susan Dillon Ayers

SDA:bjm

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER  **AUSTIN**
98 SAN JACINTO BLVD.  BEIJING
AUSTIN, TEXAS  DALLAS
78701-4078  DUBAI
  HONG KONG
TEL +1 512.322.2500  HOUSTON
FAX +1 512.322.2501  LONDON
www.bakerbotts.com  MOSCOW
  NEW YORK
  RIYADH
  WASHINGTON

May 21, 2008

068422.0106

Susan Dillon Ayers
TEL +1 512.322.2663
FAX +1 512.322.8390
sue.ayers@bakerbotts.com

Eric Manchin (*Federal Express*)
Kaeske Law Firm
1301 West 25th Street, Suite 406
Austin, Texas 78705

Ryan Tyz (*Federal Express*)
Fenwick & West
801 California St.
Mountain View, CA 94041

Re:    Third Party Subpoena to Vignette Corporation issued out of Western District of Texas by Plaintiff in *SBJ Holdings 1, LLC v. Netflix, et. al*

Gentlemen:

    Enclosed are the following materials responsive to the subpoena served on Vignette Corporation on May 5, 2007.

1.    Three CDs containing StoryServer 5, Version 5.0 platform, tools and online manuals;

2.    Hard copies of StoryServer 5, Version 5.0 manuals, installation guide and all other literature enclosed in packaging with the software;

3.    Hard copies of AIX StoryServer 5, Version 5.0 manuals, installation guide and all other literature enclosed in packaging with the software;

4.    Documents regarding Net Perceptions, Inc.

    We will supplement with the AIX StoryServer 5, Version 5.0 software as soon as practicable. Should you have any questions, please contact me.

Sincerely,

Susan Dillon Ayers

SDA:edr
Enclosures

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL  +1 512.322.2500
FAX  +1 512.322.2501
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
PALO ALTO
RIYADH
WASHINGTON

June 23, 2008

068422.0106

VIA FEDERAL EXPRESS

Ryan Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

Eric Manchin
Kaeske Law Firm
1301 West 25th Street, Suite 406
Austin, Texas  78705

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX  +1 512.322.8390
sue.ayers@bakerbotts.com

Re:    *SBJ Holdings 1, LLC v. Netflix, et al.*

Counselors:

Please find enclosed a hard drive that contains the executable software for V/5, V/6 and V/7 with all accompanying documentation.  If you wish to retain this hard drive, please remit $100 payable to Baker Botts L.L.P. and reference client matter number 068422.0106. Otherwise, please return it to my attention after you have copied the contents.

Sincerely,

Susan Dillon Ayers

SDA:bjm
Enclosures

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SBJ HOLDINGS 1, LLC | § | |
| | § | |
| V. | § | Case Number: 1:07-mc-000729-SS |
| | § | |
| NETFLEX, INC., AMAZON.COM, INC., | § | |
| and BORDERS GROUP, INC. | § | |
| | | |
| STATE OF TEXAS | § | |
| TRAVIS COUNTY | § | |

---

### AFFIDAVIT OF CONLETH S. O'CONNELL, JR.

---

On this day, Conleth S. O'Connell, Jr. appeared before me, the undersigned notary public. After I administered an oath to him, he said:

1.    "My name is Conleth S. O'Connell, Jr.  I am competent to make this affidavit.  I have reviewed the business records of Vignette Corporation to refresh my recollection and attach those records as Exhibit A.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    I have a Bachelor of Science in Computer Science from Florida International University, and a Master of Science and PhD. in Computer and Information Science from The Ohio State University.  I have been honored by The Ohio State University as a Distinguished Alumni.

3.    I am a named inventor on U.S. Patent 7,024,452 entitled "Method and System for File-System Based Caching," and U.S. Patent 7,188,216 entitled "Method and System for an Extensible Caching Framework."

4.    From 1990 through 1991, I was a Director of an industry consortium during a post-doctoral tenure associated with the Computer and Information Science Department at The Ohio State University.

5.    From 1991 through 1996, I was employed by HaL Computer Systems, where I led product development efforts and participated in the Davenport Group, a consortium that created an SGML distribution format for online documents called the DocBook DTD.

6.    In 1996, I joined Vignette as one of its first engineers and helped develop Vignette's first product, StoryServer 2.1.  I have been a Senior Vice President and the Chief Technology Officer since 2002.

7.    I participated in the adoption of XML 1.0 by the World-wide Web Consortium; led development of the first marketed XML-based Content Management product (StoryServer 3.2) and co-authored the Information and Content Exchange (ICE 1.0) protocol submitted to the w3c.

8.    The following versions of StoryServer were licensed or developed, in whole or in part, prior to December 5, 1998:  StoryServer 2.1, 2.2, 3.1, 3.2, 4.0, and 4.1 ("the StoryServer Versions").  No other versions of StoryServer were licensed, sold or developed, in whole or in part, prior to December 5, 1998.

9.    Of these StoryServer Versions, StoryServer 4.0 and 4.1 introduced the inventive subject matter claimed in the patent in suit, U.S. Patent 6,330,592.

10.   Of the StoryServer Versions, only StoryServer 2.1 and 3.1 had a beta release.

11.   The beta release for StoryServer 2.1 occurred on or about November 1, 1996.

12.   The beta release for StoryServer 3.1 occurred on or about September 1, 1997.

13.   The first product announcement for StoryServer 2.1 occurred on November 12, 1996.

14.   The first product announcement for StoryServer 2.2 occurred on or about May 20, 1997.

15.   The first product announcement for StoryServer 3.1 occurred on September 22, 1997.

16.   The first product announcement for StoryServer 3.2 occurred on March 17, 1998.

17.   The first product announcement for StoryServer 4.0 occurred on June 22, 1998.

18.   To the best of my knowledge, there was no public product announcement for StoryServer 4.1.

19.   The first product announcement for each StoryServer Version listed above in paragraphs 13-17 constituted an offer to license that StoryServer Version.

20.   For each StoryServer Version, Vignette did not sell, license, offer to sell, or offer to license that StoryServer Version, in whole or in part, prior to the first product announcement for that StoryServer version.

21.     Further affiant sayeth not."

_Conleth S. O'Connell, Jr._ (signature)

Conleth S. O'Connell, Jr.

SWORN TO and SUBSCRIBED before me by Conleth S. O'Connell, Jr. on September 28, 2007.



Notary Public in and for the State of Texas

My commission expires on _____November 6, 2009_____.

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SBJ HOLDINGS 1, LLC,

                        Plaintiff,

-vs-                                                    Case No.  A-07-MC-729-SS

NETFLIX, INC., AMAZON.COM, INC., and
BORDERS GROUP, INC.,

                        Defendants.

_____

## O R D E R

BE IT REMEMBERED on the 8th day of January 2008 the Clerk brought to the attention of

the Court that the above-captioned matter was not closed and requested instructions.

        IT IS THEREFORE ORDERED that counsel in the above-styled and numbered cause

SHOW CAUSE (in writing) within twenty (20) days of the entry of this order why this case

should not be closed and dismissed.

SIGNED this the _10_ day of January 2008.


                                    _____
                                    UNITED STATES DISTRICT JUDGE

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED
2008 FEB -7 PM 4: 25
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
DEPUTY

**SBJ HOLDINGS 1, LLC,**
                    **Plaintiff,**

-vs-                                            Case No.  A-07-CV-729-SS

**NETFLIX,  INC.,  AMAZON.COM,  INC.,  and
BORDERS GROUP, INC.,**
                    **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this the ___7th___ day of February 2008 the Court reviewed the file

in the above-captioned matter, and there being no response by counsel to the Court's order of

January 10, 2008, the Court enters the following order:

      IT IS ORDERED that the above-styled and numbered cause be, and the same is

hereby, DISMISSED WITHOUT PREJUDICE to the rights of any party herein with each

party to bear their own costs.

SIGNED on this the ___7th___ day of February 2008.

                            Sam Sparks

                    UNITED STATES DISTRICT JUDGE

p

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SBJ HOLDINGS 1, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| NETFLIX, INC., AMAZON.COM, | § | 2:07-cv-120-TJW |
| INC., BARNESANDNOBLE.COM, | § | |
| LLC, and BORDERS GROUP, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## INTERIM PROTECTIVE ORDER

Discovery in this action is likely to involve production and disclosure of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. To expedite discovery, to promote prompt resolution of disputes over confidentiality of discovery materials, to protect private, commercial confidential, or other appropriate information of the parties from disclosure or unauthorized use, and to ensure that the parties are permitted reasonably necessary use of such materials during the present litigation, pursuant to Federal Rule of Civil Procedure 26(c), it is hereby ORDERED THAT:  the following shall govern treatment of confidential information exchanged in this case for the time being and until entry of another Protective Order that will supersede this Interim Protective Order and govern for the duration of this matter:

## INFORMATION SUBJECT TO THIS ORDER

**1.**    A party or nonparty (hereinafter collectively, "designating party") may designate as confidential, in whole or in part, any document, thing, oral testimony, personal knowledge, or information (collectively "material") that is confidential or that contains confidential information, which is to be disclosed or produced to a party or pursuant to a subpoena in this action. Material that is designated at any level of confidentiality is referred to herein as "designated material."

**2.**    For purposes of this Order, "CONFIDENTIAL," as applied to designated material; is material that constitutes or contains trade secrets or other confidential research, development, proprietary or commercial information, or other information that is not publicly known, whether embodied in physical objects, documents, or the factual knowledge of persons. Any CONFIDENTIAL INFORMATION obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of preparation and litigation of this matter.

**3.**    For purposes of this Order, "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY," as applied to designated material, is material that constitutes or contains proprietary financial or technical or commercially sensitive competitive information that the producing party maintains as highly confidential in its business, including information obtained from a nonparty subject to a current Nondisclosure Agreement ("NDA"), information relating to future products not yet commercially released, strategic plans or analyses, technical documents that would reveal trade secrets, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party.

2

**4.** For purposes of this Order, HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR is a subset of HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY, and means information or material that relates to non-public patent applications (including without limitation patent re-examinations) and related communications, to confidential technical or design information, or to research and development activities concerning current or future products or code, and material so designated shall be subject to the Prosecution Bar of Paragraph 17. Any material designated as HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY, including HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR, obtained by any party from any person pursuant to discovery in this litigation may be used exclusively for purposes of preparation and litigation of this matter and more specifically shall not be used for a prohibited patent prosecution related activity as defined by Paragraph 17.

**5.** Designation shall be made, where practical, by marking each page of a document, each separate part or component of a thing, each item of tangible media containing documents, or each separate item of other material in a conspicuous manner. If not practical to so mark the material itself, a container for or a tag attached to the material shall be so marked. The marking shall state: a) "CONFIDENTIAL" or other similar legend; b) "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" or other similar legend; or c) "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR" or other similar legend. All CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR not reduced to documentary, tangible or physical form or which cannot be

conveniently designated as set forth above, shall be designated by the producing party by informing the receiving party of the designation in writing.

    **6.**    In lieu of marking the original of a document or other material prior to inspection, the designating party or its counsel may orally designate any document or other material being produced for inspection thereby making it, and the information it contains, temporarily subject to this Order.  However, each copy of such material subsequently delivered to inspecting counsel must be marked as required by this Order at the time it is so delivered in order to make the document and copies subject to this Order, provided, however, that the parties may agree on a case by case basis that documents produced may be orally designated. Furthermore, as is further explained in Paragraph 32, inadvertent production of documents without the proper designation shall not be deemed a waiver of confidentiality with regard to that material or waiver of confidentiality of similar information, and after notification of the inadvertent improper designation the receiving party shall thereafter treat the information in accordance with the proper level of designation.

    **7.**    If during the course of a deposition taken in this action, any questions are to be asked or any answers are to be given regarding designated material, then only persons designated in paragraph 13 below, as appropriate, the deponent (and the deponent's counsel in the case of a separately represented nonparty), and the reporter and videographer are allowed to be present during such portion of the deposition. This paragraph shall not be deemed to authorize disclosure of any designated material to any person to whom disclosure is prohibited under this Order.

**8.**    For designated material presented in a deposition, the designating party shall request the reporter to insert a statement regarding the confidentiality of the information into the deposition transcript, or it may have until ten (10) days after receipt of the deposition transcript within which to inform all parties, in writing, that portions of the transcript are designated, whichever is later. No such deposition transcript shall be disclosed to any person other than persons described in paragraph 13 below, as appropriate, and the deponent (and the deponent's counsel in the case of a separately represented nonparty) during these ten (10) days, and no person attending such a deposition shall disclose the contents of the deposition to any person other than those described in paragraph 13 during said ten (10) days. Upon being informed that certain portions of a deposition are designated, each party shall cause each copy of the transcript in its possession, custody or control to be marked in accordance with paragraph 5 of this Order, to the extent not already marked by the reporter. Any deposition transcript, or portions of a deposition transcript designated under this paragraph, shall be subject to all other paragraphs in this Order affecting material so designated.

## <u>NO WAIVER OF PRIVILEGE</u>

**9.**    Nothing in this Order shall be construed as requiring disclosure of privileged materials, materials subject to protection under the work product doctrine, or materials which are otherwise beyond the scope of permissible discovery.

**10.**    If material subject to a claim of attorney-client privilege or work-product immunity is inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information. If a party has inadvertently produced material subject to a claim of immunity or privilege, then

promptly following that party's written request identifying the material for which a claim of inadvertent production is made, that material shall be returned and all copies or reproductions of that material that may have been made shall be destroyed. The party returning such information may move the Court for an Order compelling production of such information, but the motion shall not assert as a ground for production the fact or circumstances of the inadvertent production.

## DISCOVERY RULES REMAIN UNCHANGED

**11.** Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Rules of Practice for Patent Cases before the Honorable John Ward, United States District Court for the Eastern District of Texas, and the Court's Deadlines for Docket Control Order and Discovery Order.

## PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL INFORMATION

**12.** Designated material shall not be used by any recipient or disclosed to anyone for any purpose other than in connection with the above-captioned action and shall not be disclosed by the recipient to anyone other than those persons authorized to receive such material pursuant to this Order, unless and until the restrictions herein are removed by order of the Court or by written stipulation of the parties. Designated material may be subject to further conditions and restrictions below.

**13.**    Access to material designated CONFIDENTIAL and to any portion of any transcript, brief, affidavit, memorandum, copy, or other paper that contains or reveals material so designated, shall be limited to:

(a)    Officers, directors and/or other employees of the parties to this action to the extent necessary to assist outside counsel in preparation of this case or evaluate the merits of the case and assess settlement options and provided that every such officer, director or employee has previously executed the Undertaking attached hereto as Exhibit A;

(b)    The parties' outside counsel of record and other outside counsel working on this matter (such other outside counsel must comply with paragraph 16 below) and their respective supporting employees (including technical advisors, legal secretaries, paralegals, legal translators, and legal clerks) actually assisting such counsel in preparation of this case, except to the extent that any of these attorneys or employees are involved in the management or day-to-day business of the respective party, any such individuals are also subject to Paragraph13(a).

(c)    Outside Consultants—meaning any outside persons (who are not employees or in-house counsel of a party) and their clerical, engineering, technical, accounting, or financial support personnel, including, but not limited to, a proposed expert witness or consultant with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof—who become qualified to receive material designated under this Order in accordance with the procedure identified in paragraph 16 below, provided

**(i)** that such clerical, engineering, technical, accounting, or financial support personnel have access to designated material only to the extent necessary to perform their duties; and

**(ii)** that such Outside Consultants agree that any clerical, engineering, technical, accounting, or financial support personnel working under the supervision of the Outside Consultants shall not be permitted to make any use or disclosure of designated materials which the Outside Consultants could not themselves make;

(d) Court reporters involved in transcribing depositions or other proceedings in this litigation, and videographers involved in recording depositions only to the extent necessary to perform their duties;

(e) Independent service bureaus that are engaged by counsel of record to perform clerical-type or exhibit-preparation services in connection with this litigation, *e.g.*, photocopying, imaging, computer data entry, and the like, and that are under an obligation to maintain such material in confidence;

(f) The Court;

(g) Court personnel involved with this case;

(h) Members of the jury in this case; and

(i) Any person to whom the designating party agrees in writing.

Outside counsel of record shall retain copies of all executed Undertakings.

**14.** Documents, testimony, information and other things designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY, HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION

BAR or other similar legend may be disclosed only to the persons identified in subsections (b) through (h) of paragraph 13 of this Protective Order, subject further to the limitations of paragraph 17 below.

15.    Material designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL  OUTSIDE COUNSEL'S EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR" may be disclosed to mock jurors engaged by any consultant in preparation for trial, provided that no such persons are officers, directors or employees of any of the parties to this action, that any such persons shall first sign an Undertaking as set forth in Exhibit B below prior to disclosure of any designated material, and such Undertakings shall be retained under the control of counsel until final termination of this action. A log of all designated materials disclosed to such mock jurors shall be retained under the control of counsel until final termination of this action. Upon final termination of this action, any person or entity who has designated or produced such disclosed information may request copies of any such Undertakings executed by mock jurors to whom such material has been disclosed and copies of the logs of the designated materials disclosed to the mock jurors. Upon receiving such a request, counsel shall provide copies of the Undertakings and logs of the designated materials disclosed to the mock jurors.

16.    Outside Consultants, or other outside counsel (as described in paragraph 13) may become qualified to receive material designated under the Order in accordance with the following procedure:

(a)    Counsel for any party proposing any such person shall submit to outside counsel of record for the other party (and also to third parties in the event the nonparty expert, consultant or other outside counsel will have access to

designated material produced by such third parties under this Order) a copy of an Undertaking in the form attached as Exhibit A signed by such person and that person's current resume or curriculum vitae that lists the person's business address, business title, profession, previous or current relationship with any party, and a listing of other cases in which the expert or consultant has testified. The original of each such Undertaking shall be maintained by counsel proposing the expert. If a particular nonparty expert or consultant has a concern signing Exhibit A because of the limitations imposed in the exhibit, the parties agree to meet and confer to discuss less restrictive requirements that can be placed on the specific nonparty expert under the circumstances;

(b)    Unless any other counsel shall notify proposing counsel of its objection to any such proposed person, and the basis therefore, within seven (7) calendar days after the receipt of a copy of the Undertaking and resume or curriculum vitae referred to in subparagraph (a) above, such person shall thereafter be deemed a qualified recipient and entitled to receive CONFIDENTIAL, HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY and HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR material pursuant to the terms and conditions of the Protective Order;

(c)    Should any counsel timely notify proposing counsel of its objection to any such proposed person and of the basis for its objection in accordance with subparagraph (b) above, he or she shall meet and confer with proposing counsel and if unable to resolve the objection(s), may file a motion within ten (10) calendar days after receipt of a copy of the Undertaking and resume or curriculum vitae referred to in subparagraph (a) above, seeking to preclude the proposed access. Proposing counsel shall not disclose material

designated under this Protective Order to such proposed person before the expiration of the time for objection or before the resolution of any such objection. There shall be a reasonable basis for such objection.

## PROSECUTION BAR

17.    Any person who receives and reviews any materials designated as "HIGHLY CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY-PROSECUTION BAR" under this Protective Order shall be subject to a "prosecution bar" and shall not participate in the preparation or prosecution of any patent or patent application (including, without limitation, any patent reissue or reexamination proceeding) for SBJ Holdings 1, LLC and its predecessor in interest, Vignette Corporation, and shall not participate in the preparation or prosecution of any patent or patent application in the field of: 1) systems to place an order for, or to rent, an item via the web; 2) systems for recommending items to rent or purchase employing collaborative filtering or automated merchandising technologies; 3) product information retrieval, and 4) distributed web service-oriented architectures or use any information derived from documents so designated for any purpose related to prosecution of patents from the time of receipt of such materials through and including two (2) years following entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action. Individuals subject to the PROSECUTION BAR additionally shall not be involved in the preparation or prosecution of any patent or patent application in the same patent family as the patents-in-suit (*i.e.,* any patent or patent application related to a patent-in-suit through a claim of priority) through and including two (2) years following entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action. The prosecution bar is not limited to work involving parties to the present litigation. In

the event that this case is remanded after entry of judgment by the U.S. district court and additional discovery takes place, then the parties agree that this provision will apply with respect to any newly produced documents, testimony, information and other things designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – PROSECUTION BAR." For purposes of this Protective Order, "prosecute" or "prosecution" shall mean the selection or identification of subject matter for patent claims to submit to the U.S. Patent and Trademark Office or any foreign patent office, and/or the preparation or drafting of any such claims.

## CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

**18.** The parties will use reasonable care when designating materials as CONFIDENTIAL or HIGHLY CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY. Nothing in this Order shall prevent a receiving party from contending that any or all materials designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY have been improperly designated. A receiving party may at any time request that the producing party cancel or modify the confidentiality designation with respect to any materials.

**19.** A party shall not be obligated to challenge the propriety of a CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes. If agreement cannot be reached, the receiving party shall

request that the Court cancel or modify a CONFIDENTIAL or HIGHLY
CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY designation.

## LIMITATIONS ON THE USE OF DESIGNATED MATERIALS

**20.**     Review of Source Code: A receiving party's access to the machine-
readable version of computer source code ("Source Code") shall be limited to
those individuals with access under this Order to material designated HIGHLY
CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY and those individuals
will be subject to the Prosecution Bar of paragraph 17. The parties' "Source Code"
designated under this protective order as such will be subject to the following
provisions:

**(a)**     Source code produced in this matter must be made available in
electronic form on a stand-alone computer that is not connected to any network,
internet or peripheral device except that the stand-alone computer may be
connected to a printer;

**(b)**     Such stand-alone computers shall be password protected and
supplied by the source code provider;

**(c)**     The source code provider shall provide a manifest of the
contents of the stand-alone computer. This manifest, will list the name, location,
and MD5 checksum of every source and executable file being produced on the
computer.

**(d)**     The stand-alone computers shall include software utilities
which will allow counsel and experts to view, search, and analyze the source
code. At a minimum, these utilities should provide the ability to (i) view, search,
and line-number any source file, (ii) search for a given pattern of text through a

number of files, (iii) compare two files and display their differences, (iv) compute the MD5 checksum of a file, and (v) print copies of selected portions of the source code.

   (e)    Storage of the Source Code in the stand-alone computer, while not in use, shall be maintained in encrypted form using PGP encryption or any other encryption means supplied by the provider;

   (f)    The stand-alone computer shall be located at outside counsel's office or other location that the parties may agree upon or at offices of experts who have been approved under this protective order;

   (g)    Access to the stand-alone computer shall be permitted only to outside counsel representing the requesting party and experts retained by the requesting party, provided each such person has been approved under this protective order and executed the undertaking attached hereto as Exhibit A;

   (h)    Excerpts of Source Code may be printed using printers attached to the stand-alone computer only for the purpose of facilitating the review thereof or for compiling deposition exhibits. The parties shall endeavor to keep to a minimum the amount of Source Code that is so printed and shall promptly destroy any printed excerpts that are determined not to be relevant to any claim or defense of any party. Every such printed page must be affixed with a legend HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY and shall be treated as such in accordance with the provisions of this protective order. At no point may the entire Source Code, or any substantial portions thereof, be printed or included in electronic documents such as legal memoranda, exhibits, reports, declarations, or other word processing or presentation documents. Any authorized paper copies of limited portions of the Source Code retained by the

requesting party must be kept in a secured container or location at all times. Paper copies of Source Code may not be copied and may not be removed from a secured container unless in a secured, private area. The requesting party shall maintain a complete log of bates numbered pages printed and shall produce such log at the time its first expert reports are delivered, regardless of the restrictions on expert discovery below.

      **(i)**    The stand-alone computer(s) shall also meet the following specifications:

      **i.**    the computer's CPU must be hyperthreading;

      **ii.**    the computer's RAM must be at least 2 gigabytes;

      **iii.**    the computer must have a spindle speed of at least 7200 rpm;

      **iv.**    the computer must have a processor speed of at least 2 ghz; and

      **v.**    the computer must be Linux or UNIX derivative and will not be Windows based;

      **vi.**    if the computer's CPU is not hyperthreading, the computer must have processor of 2.4ghz.

      **21.**    Each recipient of designated materials shall maintain such material in confidence in a secure, safe area so as to preclude access by persons who are not entitled to receive such materials and shall exercise the same standard of care with respect to the storage, custody, use and dissemination of such material as is exercised by the recipient with respect to its own confidential and proprietary material, but not less than the standard of care required to comply with this Order.

22.     Except upon consent of the designating party or upon order of the Court, any and all designated materials produced, served or otherwise made available during the course of this action, together with all reproductions, copies, abstracts, indices or summaries of those materials, shall be used only for the purpose of this litigation, shall not be used for any business purpose, and shall not be disclosed to any person who is not entitled to receive such materials.

23.     Nothing in this Order shall prevent any court reporter, videographic reporter, mediator, or their employees, or the Court, any employee of the Court or any juror from reviewing any evidence in this case for the purpose of these proceedings. Further, nothing in this Order shall impact one way or another on the admissibility of any document or other evidence at any hearing or at trial.

24.     Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning any CONFIDENTIAL and HIGHLY CONFIDENTIAL– OUTSIDE COUNSEL'S EYES ONLY designated material of which such person has prior knowledge or legitimate access prior to this litigation. Without in any way limiting the generality of the foregoing:

(a)     A present director, officer, and/or employee of a producing party may be examined and may testify concerning all CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material which has been produced by that party;

(b)     A former director, officer, agent and/or employee of a producing party may be interviewed, examined and may testify concerning any CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY designated material of which he or she has prior knowledge,

including any CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE
COUNSEL'S EYES ONLY material that refers to matters of which the witness
has personal knowledge or legitimate access prior to this litigation, which has
been produced by that party and which pertains to the period or periods of his or
her employment; and

      **(c)**    Non-parties may be examined or testify concerning any
document containing CONFIDENTIAL or HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY material of a producing party of which
the non-party had knowledge or legitimate access to prior to this litigation.  Any
person other than the non-party witness, his or her attorney(s), and any person
qualified under this Order to receive the CONFIDENTIAL or HIGHLY
CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material in question
shall be excluded from the portion of the examination concerning such
information, unless the producing party consents to persons other than qualified
recipients being present at the examination. If the witness is represented by an
attorney who is not qualified under this Order to receive such material, then prior
to the examination, the attorney shall be requested to provide a Confidentiality
Agreement, in the form of Exhibit A hereto, that he or she will comply with the
terms of this Order and maintain the confidentiality of CONFIDENTIAL or
HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material
disclosed during the course of the examination.

      **(d)**    The following restrictions shall apply to use of documents a
party has designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S
EYES ONLY material at a deposition:

(e)    A witness who previously had access to a document designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material, but who is not under a present non-disclosure agreement with the producing party that covers that document, may be shown the document if a copy of this protective order is attached to any subpoena or notice or request served on the witness for the deposition; and the witness is advised on the record of the existence of the protective order and that the protective order requires the parties to keep confidential any questions, testimony or documents that are designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL–OUTSIDE COUNSEL'S EYES ONLY.

(f)    With the exception of the witness' copy, which will be subject to all the protections of this Order, witnesses may not copy, take notes on or retain copies of any CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material used or reviewed at the deposition to the extent not otherwise allowed by this Order. The witness may not take out of the deposition room any exhibit that is marked CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY. The producing party of any CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material used at the deposition may also require that the transcript and exhibits may only be reviewed by the witness in the offices of one of the counsel representing a party in this case (or another firm acting for one of the counsel representing a party in his case and under the supervision of one of the lawyers who is bound by the terms of the order) who will store the sole authorized copy the witness is entitled to retain.  To the extent the witness makes notes regarding such transcript or exhibits, all such notes shall only be made at the offices of one of the counsel representing a party in this case

(or another firm acting for one of the counsel representing a party in his case and under the supervision of one of the lawyers who is bound by the terms of the order) and such notes shall be stored and remain at such office as well.

25.    All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court which have been designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY or which contain material so designated, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this matter, an indication of the nature of the contents of such sealed envelope or other container, the words "CONFIDENTIAL [OR HIGHLY CONFIDENTIALOUTSIDE COUNSEL'S EYES ONLY]  UNDER PROTECTIVE ORDER OF [DATE]" and a statement substantially in the following form:

This envelope contains confidential information filed in this case by (name of party) and is not to be opened nor the contents thereof to be displayed or revealed except by order of the Court presiding over this matter.

26.    A party filing pleadings under seal shall be required to confirm the confidentiality designations for any given portion of such filing such that a non-filing party's counsel can properly redact the designated portions before providing permitted access to such redacted filing.

27.    The parties agree to meet and confer regarding whether (a) any procedures should be implemented before any hearing, and at the pre-trial conference concerning the handling of designated material, and (b) to request that the Court enter an order governing the handling of any information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S

EYES ONLY" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES
ONLY — PROSECUTION BAR" during such hearing or at trial as part of its pre-
trial order. Such conditions and safeguards at the Court's discretion may include,
but are not limited to, *in camera* proceedings in chambers or proceedings where
the courtroom is closed to the general public. Nothing herein shall operate as a
waiver or relinquishment of a "CONFIDENTIAL," "HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL'S EYES ONLY" or --"HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL'S EYES ONLYPROSECUTION BAR" designation,
should such materials be disclosed at a Court hearing or other proceeding where
the general public is not so excluded.

28.     Except for the specific provisions and governing the handling of
Source Code, nothing in this Order shall prohibit the transmission or
communication of CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE
COUNSEL'S EYES ONLY between or among qualified recipients:

     **(a)**     by e-mail;

     **(b)**     by hand-delivery;

     **(c)**     in sealed envelopes or containers via the mails or an
established freight, delivery or messenger service; or

     **(d)**     by telephone, telegraph, facsimile or other electronic
transmission system; where, under the circumstances, there is no reasonable
likelihood that the transmission will be intercepted or misused by any person who
is not a qualified recipient.

## STORING OR VIEWING CONFIDENTIAL DOCUMENTS

**29.**    "CONFIDENTIAL" information may be stored or viewed only at:
(a) the business locations and private residences of outside counsel of record; (b)
the business locations and private residences of an independent expert or
consultant approved in accordance with paragraph 16 of this Protective Order;
(c) the site where any deposition relating to the information is taken; (d) the Court;
(e) any intermediate location reasonably necessary to transport the information
(*e.g.*, a hotel prior to the deposition); (f) locations for conducting any focus group
or mock trial, provided appropriate measures are taken to limit access to such
materials only to those approved under this Protective Order.  Copies of
"CONFIDENTIAL" information may be made only to the extent reasonably
necessary to prepare work product or conduct proceedings in this litigation; or (g)
the private business offices of officers, directors, or employees of a party who are
allowed under Paragraph 13 to have access to "CONFIDENTIAL" information.

**30.**    "OUTSIDE COUNSEL'S EYES ONLY" designated information
may be stored or viewed only at: (a) the business locations and private residences
of outside counsel of record; (b) the business locations and private residences of an
independent expert or consultant approved in accordance with paragraph 16 of this
Protective Order; (c) the site where any deposition relating to the information is
taken; (d) the Court; or (e) any intermediate location reasonably necessary to
transport the information (*e.g.*, a hotel prior to the deposition). Copies of
"OUTSIDE COUNSEL'S EYES ONLY" information may be made only to the
extent reasonably necessary to prepare work product or conduct proceedings in this
litigation.

## DISCOVERY FROM EXPERTS

**31.**    Testifying experts shall not be subject to discovery on any draft of his or her report in this case and such draft reports, notes or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

## INADVERTENT PRODUCTION AND IMPROPER DISCLOSURE

**32.**    Inadvertent production of confidential material without proper designation shall not be deemed a waiver of confidentiality with regard to similar information, nor shall it be deemed a waiver of confidentiality with regard to the information inadvertently disclosed. A party who discovers such inadvertent production shall promptly inform all receiving parties in writing. Receiving parties shall thereafter treat the information in accordance with the proper level of designation.

**33.**    If any designated material is disclosed to any person contrary to the terms of this Order or other than in the manner authorized by this Order, outside counsel and the party learning of the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the designating party, and without prejudice to the rights and remedies of the designating party, make every effort to retrieve the improperly disclosed material and to prevent further unauthorized disclosure on its own part and further unauthorized use and disclosure on the part of the recipient of such information or material.

## NONPARTY USE OF THIS PROTECTIVE ORDER

**34.**    A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information in the same manner and shall receive the same level of protection under this Protective Order as any party to this lawsuit.

**35.**     A nonparty's use of this Protective Order to protect its CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material does not entitle that nonparty access to CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material produced by any party in this case.

**36.**     Where a subpoena, deposition question, or discovery request, such as a party interrogatory or document request under Federal Rule of Civil Procedure 33 or 34, calls for otherwise discoverable information that is held by a party or non-party to whom it is directed under obligations of confidentiality owed to another, and the party or nonparty to whom the subpoena, deposition question, or discovery request is directed refuses to provide such documents or information on that ground, the following procedures shall apply. If the discovery request is directed to a party, that party:

 **(a)**     Shall promptly, and no later than 15 calendar days after expiry of the obligation to provide such otherwise discoverable information, identify to the party seeking the documents or information the name and address of each person or entity whose confidentiality interests are implicated by the discovery request;

 **(b)**     Shall promptly provide to each such person or entity whose confidentiality interests are implicated:

  **(i)**     Notice of its intention to disclose documents or information held under obligations of confidentiality; and

  **(ii)**     A copy of this Protective Order; and

(c)    The party from whom such discovery is sought shall within ten (10) court days thereafter disclose in compliance with this Protective Order any responsive documents or information held under obligations of confidentiality to such person unless said party or non-party moves for or obtains a protective order in this Court within that time. In that event, the documents or information may be withheld from production until the motion is decided.

37.    In the case of a discovery request, subpoena, or deposition question directed to a non-party who timely objects to disclosure of such documents or information on the grounds that it implicates a confidentiality obligation owed to another, such discovery shall not be had unless and until the party propounding such request shall obtain an order compelling disclosure of such documents or information from this Court, or in the case of third parties not subject to this Court's *in personam* jurisdiction, from a court of competent jurisdiction.

## MISCELLANEOUS

38.    The parties agree that where a document production request seeks production of an attorney-client privileged communication between the responding party and its litigation counsel that was communicated on or after April 9, 2007, the date SBJ HOLDINGS 1, LLC filed its complaint in this action, the party responding to the request need not list such documents on its privilege log.

39.    Nothing in this Order shall be construed to prevent a designating party from seeking such further provisions regarding confidentiality as may be appropriate, prior to disclosure, through negotiations with counsel or, if such negotiations are not successful, by motion to the Court.

**40.**    Nothing in this Order shall be construed as a waiver by a party of any objections that might be raised as to the admissibility at trial of any evidentiary materials.

**41.**    Nothing in this Order shall bar or otherwise restrict counsel to the parties from rendering advice to their clients with respect to this litigation and, in the course thereof, referring to or relying upon examination of information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY pursuant to this Order, so long as no portion of the content of the information so designated is disclosed.

**42.**    Nothing in this Protective Order precludes any party or producing entity from seeking a further Protective Order for any particularly sensitive information as to which such party or producing entity believes this Protective Order insufficiently protects. Nothing in this Protective Order precludes any party or producing entity from seeking relief as to this Protective Order or portions thereof for good cause shown. All parties are subject to the continuing jurisdiction of this Court to modify and interpret this Protective Order.

**43.**    If a third party, another court or an administrative agency, subpoenas or orders production of documents or information designated for protection under this Protective Order which a party has obtained under the terms of this Protective Order, such party shall promptly notify the party or other person who designated the document of the pendency of such subpoena or order.

**44.**    Within sixty (60) days after final determination of this action, all designated materials that have been served or otherwise made available during the course of this action, together with all reproductions, copies, abstracts, indices or summaries of those materials, shall be delivered to counsel for the designating

party or, with the written consent of such counsel, destroyed at the expense of the designating party. Notwithstanding the above, each outside trial counsel of the parties may retain one copy of designated materials, to maintain a complete file of the litigation. Any retained material designated as "OUTSIDE COUNSEL'S EYES ONLY" shall be retained in a sealed container in a facility under lock and key. All CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY not embodied in physical objects and documents, shall remain subject to this Order. Any Source Code produced by any party, and any authorized copies thereof, shall be returned to the producing party.

**45.**    The United States District Court for the Eastern District of Texas, Marshall Division, is responsible for the interpretation and enforcement of this Protective Order. All disputes concerning CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY material produced under the protection of this Protective Order shall be resolved by the United States District Court for the Eastern District of Texas, Marshall Division.

## ORDER

**IT IS SO ORDERED.**

SIGNED this 11th day of October, 2007.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# EXHIBIT I

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL  +1 512.322.2500
FAX  +1 512.322.2501
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
PALO ALTO
RIYADH
WASHINGTON

June 18, 2008

VIGNETTE CORPORATION
Netflix/Amazon Subpoena
068422.0106

Susan Dillon Ayers
TEL  +1 512.322.2663
FAX  +1 512.322.8390
sue.ayers@bakerbotts.com

BY ELECTRONIC MAIL

Ryan Tyz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

Eric Manchin
Kaeske Law Firm
1301 West 25th Street, Suite 406
Austin, Texas  78705

Re:    *SBJ Holdings 1, LLC v. Netflix, et al.*

Dear Ryan:

I am writing in response to your letter of May 23, 2008.

On June 11, 2008, we conferred regarding the substance of the requests for production contained in your subpoenas to Vignette. Since that conversation, my client has raised one issue regarding the Interim Protective Order governing the underlying litigation in the Eastern District of Texas. You have offered to proceed under that Order vis-à-vis Vignette's production of information. With one exception, that is acceptable to Vignette.

Paragraph 17 of the October 11, 2007 Interim Protective Order is titled Prosecution Bar. This paragraph was apparently intended to protect Defendants' production of sensitive information. As drafted, it offers no comparable protection to Vignette in the production of its proprietary information. Vignette's production of source code will occur by agreement of the parties in response to the original subpoena that issued out of the Western District of Texas and the order entered by Judge Sparks. Therefore, I suggest that we submit a joint motion requesting that Judge Sparks enter a Protective Order that conforms to the Interim Protective Order, substituting the following for the original paragraph 17:

PROSECUTION BAR

17. Any person who receives and reviews any materials designated by Netflix, Inc., Amazon.com, Inc., Barnesandnoble.com, LLC, or Borders Group, Inc. as "HIGHLY

**BAKER BOTTS** LLP

Ryan Tyz                                    - 2 -                                    June 18, 2008

CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY - PROSECUTION BAR" under this Protective Order shall be subject to a "prosecution bar" and shall not participate in the preparation or prosecution of any patent or patent application (including, without limitation, any patent reissue or reexamination proceeding) for SBJ Holdings 1, LLC or Vignette Corporation.

Any person who receives and reviews any materials designated by Vignette Corporation as "HIGHLY CONFIDENTIAL OUTSIDE COUNSEL'S EYES ONLY - PROSECUTION BAR" under this Protective Order shall be subject to a "prosecution bar" and shall not participate in the preparation or prosecution of any patent or patent application (including, without limitation, any patent reissue or reexamination proceeding) for Netflix, Inc., Amazon.com, Inc., Barnesandnoble.com, LLC, or Borders Group, Inc. and their predecessors or successors in interest.

Persons subject to this prosecution bar shall not participate in the preparation or prosecution of any patent or patent application in the field of: 1) systems to place an order for, or to rent, an item via the web; 2) systems for recommending items to rent or purchase employing collaborative filtering or automated merchandising technologies; 3) product information retrieval, and 4) distributed web service-oriented architectures or use any information derived from documents so designated for any purpose related to prosecution of patents from the time of receipt of such materials through and including two (2) years following entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in the underlying action, SBJ Holdings, LLC v. Neflix, Inc., et al., Civil Action No. 2:07-cv-120-TJW, in the United States District Court for the Eastern District of Texas, Marshall Division.

Individuals subject to the PROSECUTION BAR additionally shall not be involved in the preparation or prosecution of any patent or patent application in the same patent family as the patent-in-suit (i.e., any patent or patent application related to a patent-in-suit through a claim of priority) through and including two (2) years following entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in the underlying action. The prosecution bar is not limited to work involving parties to the underlying action.

In the event that the underlying action is remanded after entry of judgment by the U.S. district court and additional discovery takes place, then the parties agree that this provision will apply with respect to any newly produced documents, testimony, information and other things designated as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY - PROSECUTION BAR." For purposes of this Protective Order, "prosecute" or "prosecution" shall mean the selection or identification of subject matter for patent claims to submit to the U.S Patent and Trademark Office or any foreign patent office, and/or the preparation or drafting of any such claims.

If this language is acceptable to you, I will draft a joint motion and proposed order for your review.

**BAKER BOTTS** LLP

Ryan Tyz                                    - 3 -                                    June 18, 2008

Subject to our agreement regarding the entry of a Protective Order in the Western District of Texas, and subject to and without waiving the grounds set forth in the Motion to Quash filed in the Northern District of California on May 13, 2008, Vignette will produce the following documents and things:

Request No. 1: Vignette will produce executable software and product documentation for V/5, V/6, and V/7.

Request No. 2: Vignette has conducted a diligent review of its files and has not found any responsive materials that are marked with the number of the patent in suit. If Vignette locates any responsive documents, they will be produced.

Request Nos. 3 & 4: Vignette will produce a stipulation or affidavit stating that it has not located any documents marked with the number of the patent in suit, and that it licensed products that embody the patented subject matter after December 11, 2001.

Request No. 5: Vignette will produce StoryServer versions 3.1, 3.2, 4.0 and 4.1 at its escrow facility, Iron Mountain, in Union City, California. The following individuals will have access to these materials: David Hadden, Darren Donnelly, Hector Ribera, Carolyn Chang, and Ryan Tyz. When you have selected an expert and provide identifying information to me, we can amend the agreement with Iron Mountain to permit access by that person. The terms of the Interim Protective Order governing printing of source code are acceptable to Vignette and will be incorporated in the proposed protective order to be filed in the Western District of Texas.

Request No. 6: This request for documents relating to Vignette's implementation of StoryServer at customer websites, even with your suggestion limitation, is unacceptable to Vignette.

Request No. 7: Vignette has produced all documents relating to Net Perceptions.

Vignette expects to produce these materials to you, and to Eric Manchin on behalf of SBJ, by June 24, 2008.

Sincerely,

Susan Dillon Ayers

SDA:sda

# EXHIBIT J

Case 3:08-mc-80109-SI    Document 18-2    Filed 07/25/2008    Page 65 of 95

ᐯAO88 (Rev. 12/07) Subpoena in a Civil Case            05/08/08    220

# UNITED STATES DISTRICT COURT
## Northern District of California

SBJ IP HOLDINGS 1, LLC

**SUBPOENA IN A CIVIL CASE**

V.

NETFLIX, INC., AMAZON.COM, INC., BARNESANDNOBLES.COM,
LLC, and BORDERS GROUP, INC.

Case Number:[1]  2:07-cv-120-CE
(U.S.D.C. Eastern - Texas)

TO:

Vignette Corporation                    c/o  CT Corporation System
55 New Montgomery Street, Suite 619          818 West Seventh Street
San Francisco, CA 94105                 Los Angeles, CA 90017

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below
to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

SEE- ATTACHMENT A

| PLACE | DATE AND TIME |
|---|---|
| Fenwick & West, 801 California Street, Mountain View, CA 94041 | May 13, 2008 5:00 p.m. (PST) |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Ryan A. Tyz, Attorneys for Netflix, Inc., Amazon.com, Inc., and Borders Group, Inc. | May 8, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ryan A. Tyz
Fenwick & West LLP
801 California Street, Mountain View, CA 94041 (650) 988-8500

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

1          ## ATTACHMENT A TO SUBPOENA TO VIGNETTE CORPORATION

2                                 ## DEFINITIONS

3          A.      "VIGNETTE," "YOU" and "YOUR" as used herein, means Vignette Corporation

4    and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

5    entities of VIGNETTE, any and all predecessors and successors thereof, and any entities acting or

6    purporting to act for or on behalf of, or who are subject to the direction or control of, any of the

7    foregoing entities, including agents, employees, officers, directors, attorneys, consultants,

8    contractors, subcontractors and representatives.

9          B.      "SBJ" as used herein, means the named plaintiff SBJ IP HOLDINGS 1, LLC, and

10   any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of

11   SBJ, any and all predecessors and successors thereof, and any entities acting or purporting to act

12   for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities,

13   including agents, employees, officers, directors, attorneys, consultants, contractors,

14   subcontractors and representatives.

15         C.      "NETFLIX" as used herein, means one of the named defendants Netflix, Inc., and

16   any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of

17   NETFLIX, any and all predecessors and successors thereof, and any entities acting or purporting

18   to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing

19   entities, including agents, employees, officers, directors, attorneys, consultants, contractors,

20   subcontractors and representatives.

21         D.      "AMAZON" as used herein, means one of the named defendants Amazon.com,

22   Inc., and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

23   entities of AMAZON, any and all predecessors and successors thereof, and any entities acting or

24   purporting to act for or on behalf of, or who are subject to the direction or control of, any of the

25   foregoing entities, including agents, employees, officers, directors, attorneys, consultants,

26   contractors, subcontractors and representatives.

27         E.      "BORDERS" as used herein, means one of the named defendants Borders Group,

28   Inc., any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned

                                           1

entities of BORDERS, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

F.  "PATENT-IN-SUIT" as used herein, means U.S. Patent No. 6,330,592, titled "Method, Memory, Product, and Code for Displaying Pre-Customized Content Associated with Visitor Data," dated December 11, 2001.

G.  "STORYSERVER" as used herein means YOUR STORYSERVER software product, including all versions and derivatives thereof (including those products under a different name).

H.  "NET PERCEPTIONS" as used herein means the company Net Perceptions, Inc. or NPI that Vignette entered into a software license agreement with that has an effective date of April 10, 1998.

I.  "Documents" shall mean the original and all non-identical copies of any written, typed, printed, photocopied, photographic, machine-readable, magnetically or optically recorded matter of any kind, or electronically stored information, including, but not limited to, letters, envelopes, forms, affidavits, correspondence, telegraphs, telecopies, telefaxes, paper communications, electronic communications, signed statements, tabulations, charts, memoranda, checks, appointment books, records, proposals, memoranda or other transcriptions by mechanical device, by longhand or shorthand recording, tape recorded or by electronic or any other means, computer-generated information, computer software, computer programs, computer code, intra-office communications, interoffice communications, all summaries of oral communications, telephonic or otherwise, microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads, opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets, telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers, studies, summaries, worksheets, telexes, cables and all other graphic materials, writings and instruments, however produced or reproduced. A document includes all documents appended thereto.

2

05-08-2008  TO:TEAM  FROM-FENWICK & WEST MOUNTAIN VIEW    650-938-5200  T-506  P.006/009  F-578

J.     "Communications" shall refer to all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail and all other documents evidencing any verbal or nonverbal interaction between persons and entities.

K.     The terms "relating to" or "relate to" shall mean concerning, showing, demonstrating, comprising, citing, quoting, regarding, involving, representing, evidencing, constituting, discussing, mentioning, containing, analyzing, supporting, embodying, reflecting, identifying, incorporating, describing, commenting on, referring to, considering, recommending, dealing with or pertaining to in whole or in part.

L.     The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests.

M.     The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

N.     The term "this ACTION" shall refer to *SBJ IP Holdings 1, LLC v. Netflix, Inc., et al.*, United States District Court, Eastern District of Texas, Civil Action No. 2:07-cv-120-TJW.

## INSTRUCTIONS

A.     In responding to the following requests, furnish all available documents, including documents in the possession, custody, or control of any of YOUR directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under YOUR control, as well as documents which YOU have a legal right to obtain, not merely documents in the direct possession of VIGNETTE. If you cannot fully respond to the following requests after exercising due diligence to secure the documents requested thereby, so state, and specify the portion of each request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested documents.

B.     If YOU object to any portion of any request for production of documents, please

3

1    provide all documents responsive to the portion of the request to which it does not object as soon

2    as possible.

3          C.     Electronic records and computerized information must be produced in native

4    format, together with a description of the system from which they were derived sufficient to

5    permit rendering the records and information intelligible.

6          D.     Selection of documents from the files and other sources and the numbering of such

7    documents shall be performed in such a manner as to ensure that the source of each document

8    may be determined, if necessary.

9          E.     File folders with tabs or labels or directories of files identifying documents called

10    for by these requests must be produced intact with such documents.

11         F.     Documents attached to each other shall not be separated.

12         G.     If YOU assert that certain documents or things are privileged, please identify:

13               1.     The nature of the privilege;

14               2.     The author(s) of the documents;

15               3.     All recipients of the documents;

16               4.     The date the document was created;

17               5.     The subject matter to which the document pertains; and

18               6.     All persons with access to the documents.

19         H.     The requests contained herein are intended to be continuing in nature so as to

20    require supplementation promptly following the discovery of additional responsive information.

21         I.     If any request is unclear or ambiguous, please do not delay, but contact counsel for

22    Netflix, Amazon, and Borders, immediately for clarification.

23         J.     If YOU consider any documents that YOU are producing to be confidential or

24    highly confidential, please designate them accordingly and such documents will be handled

25    pursuant Patent Local Rule 2-2 of the Eastern District of Texas until entry of a Protective Order.

26                  **<u>REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS</u>**

27         1.     A copy of each STORYSERVER version licensed, used, or sold after the issuance

28    of the PATENT-IN-SUIT, which is December 11, 2001, as it was used by YOU and/or provided

1   to YOUR users, including but not limited to all accompanying packaging and documentation.

2      2.      All documents marked with the number of the PATENT-IN-SUIT in connection

3   with making, offering for sale or license, sale or license, of any STORYSERVER version or any

4   other of YOUR products.

5      3.      Documents sufficient to show each period between December 11, 2001 and the

6   present that your STORYSERVER product was marked, including the number of units sold and

7   each person to whom it was sold during each such period.

8      4.      Documents sufficient to show each period between December 11, 2001 and the

9   present that STORYSERVER was not marked, including the number of units sold and each

10   person to whom it was sold during each such period.

11      5.      All source code for STORYSERVER versions 3.1, 3.2, 4.0 and 4.1.

12      6.      All documents relating to the implementation and/or incorporation of

13   STORYSERVER versions 3.1, 3.2, 4.0 or 4.1 in any user or customer websites on or before

14   December 11, 2001.

15      7.      All documents relating to NET PERCEPTIONS.

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SBJ HOLDINGS 1, LLC | § | |
| | § | |
| V. | § | Case Number:  3:08-mc-80109-SI |
| | § | |
| NETFLIX, INC., AMAZON.COM, INC., | § | |
| and BORDERS GROUP, INC. | § | |
| | | |
| STATE OF TEXAS | § | |
| TRAVIS COUNTY | § | |

---

## AFFIDAVIT OF CONLETH S. O'CONNELL, JR.

---

On this day, Conleth S. O'Connell, Jr. appeared before me, the undersigned notary public. After I administered an oath to him, he said:

1.    "My name is Conleth S. O'Connell, Jr.  I am competent to make this affidavit.   I have reviewed the business records of Vignette Corporation to refresh my recollection. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    I have a Bachelor of Science in Computer Science from Florida International University, and a Master of Science and PhD. in Computer and Information Science from The Ohio State University. I have been honored by The Ohio State University as a Distinguished Alumni.

3.    I am a named inventor on U.S. Patent 7,024,452 entitled "Method and System for File-System Based Caching," and U.S. Patent 7,188,216 entitled "Method and System for an Extensible Caching Framework."

4.    From 1990 through 1991 I was a Director of an industry consortium during a post-doctoral tenure associated with the Information Science Department at The Ohio State University.

5.    From 1991 through 1996 I was employed by HaL Computer Systems, where I led product development efforts and participated in the Davenport Group, a consortium that created an SGML distribution format for online documents called the DocBook DTD.

6.    In 1996 I joined Vignette as one of its first engineers and helped develop Vignette's first product, StoryServer 2.1.  I have been a Senior Vice President and the Chief Technology Officer since 2002.

7.    I participated in the adoption of XML 1.0 by the World-wide Web Consortium; led development of the first marketed XML-based Content Management product (StoryServer 3.2) and co-authored the Information and Content Exchange (ICE 1.0) protocol submitted to the w3c.

8.    In January 2007, in an arm's length transaction, Vignette sold the '592 patent to SBJ IP Holdings 1, LLC.

9.    The Purchase Price of the Patent included an initial cash payment and contingent cash payment.

10.    Vignette retained a percentage interest in any future "monetization" event, such as the subsequent re-sale of the patent, or a judgment.

11.    Vignette and SBJ are not related entities, and do not share employees, capital, or ownership of any property.

12.    Vignette is not collaborating with SBJ in its prosecution of the underlying litigation in the Eastern District of Texas.

13.    SBJ has served Vignette with a third party subpoena, issued out of the Western District of Texas.

14.    Vignette has not been represented by SBJ's counsel in either the Western District of Texas or this Court in regard to the third-party discovery disputes with Defendants.

15.    Defendants' request actually seeks to compel the production of the confidential information of third parties.

16.    The information that Defendants' seek relates to as many as 1,057 Vignette customers who licensed StoryServer prior to December 11, 2001.

17.    Any information in Vignette's possession regarding these customers' website systems or products is subject to confidentiality obligations within non-disclosure and master agreements that prohibit Vignette from producing such information without first notifying the customer.

18.    Vignette must provide each customer with the opportunity to object to the request and to seek adequate protection of their confidential information if its production is compelled.

19.    Furthermore, this information is now more than six years old and does not reside in one centralized location.

20.    It would take no less than 1,600 hours to determine whether and where all such information has been archived by Vignette, if it has been retained at all.

21.    Conservatively, it would take another 280 hours to produce the information found after a diligent search.

22.    These estimates do not account for the time that Vignette's professional services personnel – those who actually carried out the implementation of StoryServer at customer sites – would have to devote to searching for relevant information and responding to requests from Vignette's legal department.

23.    Further affiant sayeth not."


Conleth S. O'Connell, Jr.

SWORN TO and SUBSCRIBED before me by Conleth S. O'Connell, Jr. on July 25, 2008.


LISA M. LYONS
MY COMMISSION EXPIRES
November 6, 2009

Notary Public in and for the State of Texas


My commission expires on _Le November 2009_

# EXHIBIT L

O AO88  (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Western    **DISTRICT OF**    Texas

SBJ IP HOLDINGS, LLC

V.

NETFLIX, INC., AMAZON.COM, INC.,
BARNESANDNOBLE.COM, LLC, AND
BORDERS GROUP, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 2:07-CV-120-CE

U.S.D.C. (Eastern District of Texas)

TO: Vignette Corporation
1301 S. MoPac Expressway, Suite 100
Austin, Texas  78746

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents and Things listed on Attachment "A"

| PLACE | DATE AND TIME |
| --- | --- |
| Sprinkle IP Law Group, 1301 West 25th Street, Suite 408, Austin, Texas  78705 | May 20, 2008 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICERiS SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    Attorney for Plaintiff | DATE    May 5, 2008 |
| --- | --- |

ISSUING OFFICERiS NAME, ADDRESS AND PHONE NUMBER

Eric Manchin, KAESKE LAW FIRM, 1301 West 25th Street, Suite 406, Austin, Texas  78705; (512) 366-7300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

CTH: 5/5/08 @ 4:15 PM

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

|  |  |
|---|---|
| DATE | SIGNATURE OF SERVER |

|  |
|---|
| ADDRESS OF SERVER |

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A TO SUBPOENA TO VIGNETTE CORPORATION

## DEFINITIONS

A.      The term "VIGNETTE," "YOU" and "YOUR" as used herein, means, Vignette Corporation and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of VIGNETTE, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

B.      "SBJ" as used herein, means the names plaintiff SBJ IP HOLDINGS 1, LLC, and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of SBJ, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

C.      "NETFLIX" as used herein, means one of the named defendants Netflix, Inc., and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of NETFLIX, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

D.      "AMAZON" as used herein, means one of the named defendants, Amazon.com, Inc., and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of AMAZON, any and all predecessors and successors thereof, and any entities acting or

purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

E.    "BORDERS" as used herein, means one of the named defendants, Borders Group, Inc., and any parent entities, subsidiaries, divisions, affiliates, branches, wholly or partly owned entities of BORDERS, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

F.    "PATENT-IN-SUIT" as used herein, means U.S. Patent No. 6,330,592, titled "Method, Memory, Product, and Code for Displaying Pre-Customized Content Associated with Visitor Data," dated December 11, 2001.

G.    "PATENT SUBJECT MATTER" as used herein, means any method, program(s), application, use, product, or code for displaying pre-customized content associated with user visitor data.

H.    "INVENTORS" as used herein, means the inventors listed on the PATENT-IN-SUIT, Michael K. Makuch and Neil Webber.

I.    "STORYSERVER" as used herein means YOUR STORYSERVER software product, including all versions and derivatives thereof.

J.    "NET PERCEPTIONS" as used herein means the company, Net Perceptions, Inc. or NPI, that Vignette entered into a software license agreement with that has an effective date of April 10, 1998.

K.    "Documents" shall mean the original and all non-identical copies of any written, typed, printed, photocopied, photographic, machine-readable, magnetically or optically recorded matter of any kind, or electronically stored information, including, but not limited to, letters, envelopes, forms, affidavits, correspondence, telegraphs, telecopies, telefaxes, paper, communications, electronic communications, signed statements, tabulations, charts, memoranda, checks, appointment books, records, proposals, memoranda or other transcriptions by mechanical device, by longhand or shorthand recording, tape recorded or by electronic or any other means, computer-generated information, computer software, computer programs, computer code, intra-office communications, interoffice communications, all summaries of oral communications, telephonic or otherwise, microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads, opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets, telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers, studies, summaries, worksheets, telexes, cables and al other graphic materials, writings and instruments, however produces or reproduced.  A document includes all documents appended thereto.

L.    "Communications" shall refer to all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail and all other documents evidencing any verbal or nonverbal interaction between persons and entities.

M.    The terms "relating to" or "relate to" shall mean concerning, showing, demonstrating, comprising, citing, quoting regarding, involving, representing, evidencing, constituting, discussing, mentioning, containing, analyzing, supporting, embodying, reflecting,

identifying, incorporating, describing, commenting on, referring to, considering, recommending, dealing with or pertaining to in whole or in part.

N.      The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests.

O.      The singular form of any word shall be deemed to include the plural.  The plural form of any word shall be deemed to include the singular.

P.      The term "this ACTION" shall refer to *SBJ IP Holdings 1, LLC v. Netflix, Inc., et al.*, United States District Court, Eastern District of Texas, Civil Action No. 2:07-cv-12-TJW.

## INSTRUCTIONS

A.      In responding to the following requests, furnish all available documents, including documents in the possession, custody, or control of any of YOUR directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under YOUR control, as well as documents which YOU have a legal right to obtain, not merely documents in the direct possession of VIGNETTE.  If you cannot fully respond to the following requests after exercising due diligence to secure the documents requested thereby, so state, and specify the portion of each request that cannot be responded to fully and completely.  In the latter event, state what efforts were made to obtain the requested documents.

B.      If YOU object to any portion of any request for production of documents, please provide all documents responsive to the portion of the request to which it does not object as soon as possible.

C.      Electronic records and computerized information must be produced in native

format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

      D.     Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

      E.     File folders with tabs or labels or directories of filed identifying documents called for by these requests must be produced intact with such documents.

      F.     Documents attached to each other shall not be separated.

      G.     If YOU assert that certain documents or things are privileged, please identify:

          1.     The nature of the privilege;

          2.     The author(s) of the documents;

          3.     All recipients of the documents:

          4.     The date the document was created;

          5.     The subject matter to which the document pertains; and

          6.     All persons with access to the documents.

      H.     The requests contained herein are intended to be continuing in nature so as to require supplementation promptly following the discovery of additional responsive information.

      I.     If any request is unclear or ambiguous, please do not delay, but contact counsel for SBJ immediately for clarification.

      J.     If YOU consider any documents that YOU are producing to be confidential or highly confidential, please designate them accordingly and such documents will be handled pursuant to Patent Local Rule 2-2 of the Eastern District of Texas until entry of a Protective Order.

## REQUESTS FOR DOCUMENTS AND THINGS

1.      All DOCUMENTS relating to research, design, development, implementation, operation, evaluation, or testing of STORYSERVER or the PATENT SUBJECT MATTER prior to December 5, 1998, including but not limited to specifications, user manuals, programmer guides, demonstrations, application notes, operating handbooks, operating instructions, datasheets, diagrams, schematics, software, firmware, source code, object code, executable code, software language references, test plans, test procedures, test results, test documents, documents related to shared development projects, press releases, product roadmaps, white papers, marketing collateral, and related communications such as email and memoranda.

2.      Documents sufficient to evidence each discussion with, or disclosure to, or other manner of providing to a third party, or sale/license of, offer to sell/license, or other prospective or actual commercialization of, the STORYSERVER product or the PATENT SUBJECT MATTER prior to December 5, 1998, including but not limited to contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta testing agreements, and third party or joint development agreements.

3.      All documents and communications relating to the PATENT-IN-SUIT, including but not limited to patent applications, opinions, summaries, descriptions, analysis, notes, notebooks, valuations, drafts, prior art searches, assignments, mortgages, transfers, agreements, licenses, or offers to license.

4.      All documents and communications referring or relating to SBJ, NETFLIX, AMAZON or BORDERS.

5.      All documents and communications relating to this ACTION, including but not limited to documents relating to YOUR interest in this ACTION.

6.      A copy of each STORYSERVER version licensed, used or sold after the issuance of the PATENT-IN-SUIT, which is December 11, 2001, as it was used by YOU and/or provided to YOUR users, including but not limited to all accompanying packaging and documentation.

7.      All documents marked with the number of the PATENT-IN-SUIT in connection with making, offering for sale or license, sale or license, of any STORYSERVER version or any other of YOUR products.

8.      Documents sufficient to show each period between December 11, 2001 and the present that your STORYSERVER product was marked, including the number of units sold and each person to whom it was sold during each such period.

9.      Documents sufficient to show each period between December 11, 2001 and the present that STORYSERVER was not marked, including the number of units sold and each person to whom it was sold during each such period.

10.     All source code for STORYSERVER versions 3.1, 3.2, 4.0 and 4.1.

11.    All documents relating to the implementation and/or incorporation of STORYSERVER versions 3.1, 3.2, 4.0, 4.1 in any customer websites on or before December 11, 2001.

12.    All documents relating to NET PERCEPTIONS.

13.    All documents and things evidencing, regarding or relating to the conception and/or reduction to practice and/or design and development of the invention(s) of the PATENT-IN-SUIT, including without limitation, any documents or things relating to any product that practices the invention(s) claimed in the PATENT-IN-SUIT.

14.    All documents and communications referring or relating to the INVENTORS and the PATENT-IN-SUIT.

# EXHIBIT M



US006330592B1

(12) **United States Patent**
Makuch et al.

(10) Patent No.:     US 6,330,592 B1
(45) Date of Patent:     Dec. 11, 2001

(54) **METHOD, MEMORY, PRODUCT, AND CODE FOR DISPLAYING PRE-CUSTOMIZED CONTENT ASSOCIATED WITH VISITOR DATA**

(75) Inventors: **Michael K. Makuch**, Austin; **Neil Webber**, Round Rock, both of TX (US)

(73) Assignee: **Vignette Corporation**, Austin, TX (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/205,077**

(22) Filed: **Dec. 5, 1998**

(51) Int. Cl.7 ............................................. **G06F 15/16**
(52) U.S. Cl. .................. **709/217; 709/203; 711/118; 707/10**
(58) Field of Search ........................... 709/224, 223, 709/217; 711/118; 707/10

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,572,643 | * 11/1996 | Judson | 709/218 |
| 5,727,129 | * 3/1998 | Barrett et al. | 706/10 |
| 5,740,430 | 4/1998 | Rosenberg et al. | 395/616 |
| 5,796,952 | * 8/1998 | Davis et al. | 709/224 |
| 5,870,559 | * 2/1999 | Leshem et al. | 709/224 |
| 5,878,223 | * 3/1999 | Becker et al. | 709/223 |
| 5,958,008 | * 9/1999 | Pogrebisky et al. | 709/223 |
| 6,067,565 | * 5/2000 | Horvitz | 709/218 |

| | | | |
|---|---|---|---|
| 6,085,226 | * 7/2000 | Horvitz | 709/203 |
| 6,094,662 | * 7/2000 | Hawes | 707/104 |
| 6,112,279 | * 8/2000 | Wang | 711/119 |
| 6,128,655 | * 10/2000 | Fields et al. | 709/219 |
| 6,138,141 | * 10/2000 | DeSimone et al. | 709/203 |
| 6,141,737 | * 10/2000 | Krantz et al. | 711/171 |
| 6,185,586 | * 2/2001 | Judson | 707/513 |
| 6,185,608 | * 2/2001 | Hon et al. | 709/216 |

* cited by examiner

*Primary Examiner*—Krisna Lim
(74) *Attorney, Agent, or Firm*—Gray Care Ware & Freidenrich, LLP

(57) **ABSTRACT**

Visitor interests can be tracked by including "keyword directives" in content contained within the web site. These keyword directives specify a keyword indicating the type of category of information represented by the content. As the content is delivered to the visitor in the form of a web page, the number of keyword directives attached to the content is accumulated into a specified visitor profile. Over time, this visitor profile can represent the types of information the visitor has viewed and serve as an indicator of his or her preferences. In this way, the invention can accumulate a visitor profile unobtrusively, without requiring the visitors to fill out a survey or questionnaire. The profile may also be augmented with explicit information the visitor provides over time, such as a name or address provided when ordering a product from the site. The invention then delivers personalized pages to the visitor by examining such visitor's profile.

**19 Claims, 3 Drawing Sheets**



SBJ 00005



*FIG. 1*

*FIG. 3*

SBJ 00006

200

*FIG. 2*





*FIG. 4*

US 6,330,592 B1

**1**

# METHOD, MEMORY, PRODUCT, AND CODE FOR DISPLAYING PRE-CUSTOMIZED CONTENT ASSOCIATED WITH VISITOR DATA

## TECHNICAL FIELD

This invention relates generally to the usage of a computer network by a user as more specifically to the techniques of providing specialized information to a network user based on accumulated user data.

## BACKGROUND

The World Wide Web (WWW) of computers is a large collection of computers operated under a client-server computer network model. In a client-server computer network, a client computer requests information from a server computer. In response to the request, the server computer passes the requested information to the client computer. Server computers are typically operated by large information providers, such as commercial organizations, governmental units, and universities, and are typically referred to as "web sites". Client computers are typically operated by individuals.

To ensure interoperability in a client-server computer network, various protocols are observed. For example, a protocol known as the Hypertext Transport Protocol (HTTP) is used to move hypertext files across the WWW. In addition, the WWW observes several protocols for organizing and presenting information, two examples being the Hypertext Markup Language (HTML) and the Extensible Markup Language (XML). The information delivered by the server computer is typically referred to as a "web page".

A server computer can use a technique known as "dynamically-generated customized pages" to create a web page in response to a request for information from a client computer. A dynamically-generated customized page results in a set of information in a particular format. For example, a first client computer may support the ability to represent information in a number of columns, while a second client computer may support the ability to represent information in a table. Thus, a server computer receiving a request from the first client computer can dynamically generate the requested information in a format with columns. It can respond to a request from the second client computer by dynamically generating the requested information in table format. In this example, two customized pages are created to represent the same information.

It is not unusual for a server computer on the WWW to contain thousands or even tens of thousands of web pages. This large quantity of makes it difficult for a person, i.e., a "web site visitor", operating a client computer to locate the information of most interest to them. In much the same way that dynamically-generated customized pages can be used to present the same information in a different presentation format for each client computer, dynamically-generated customized pages can be used to select the information to be displayed so that each web site visitor may see information customized to their specific interests. This process is known in the art as personalization.

Personalization can be achieved through current technology using survey questions to ascertain the visitor's interests, and using dynamically-generated customized pages compute customized pages for each visitor. There are two disadvantages to this approach. First, web site visitors frequently prefer to not fill out questionnaires when visiting a web site, making it difficult for a site to gather the

**2**

necessary visitor preference data. Second, dynamic generation of every page on a server computer does not scale well for large numbers of requests. In other words, existing methods provide a relatively slow response when a large number of requests are made for personalized pages. This slow response time is attributable to the fact that in existing systems a computer program must be executed to completely generate each dynamic page on every single request.

In view of the foregoing, it would be highly desirable to provide a technique to unobtrusively gather web site visitor preference data and efficiently respond to a large number of requests for personalized pages.

## SUMMARY OF THE INVENTION

The invention is a method and apparatus for learning in what a visitor is interested and what demographics the visitor may demonstrate so as to deliver personalized information to the visitor based upon accumulated data, and to do so without requiring dynamic page generation for each individual visitor.

For example, a visitor may demonstrate interest in football and, in particular, his favorite football team. The present invention learns this by observing the behavior of the visitor, i.e., which sports articles he reads and if such articles are focused even further. If a tendency is observed, the learned knowledge is then used to deliver more information about that team to the visitor. Such preferred articles can be recycled by having the invention deliver the same information to other visitors who have the same favorite team.

Visitor interests can be tracked by including "keyword directives" in content contained within the web site. These keyword directives specify a keyword indicating the type of category of information represented by the content. As the content is delivered to the visitor in the form of a web page, the number of keyword directives attached to the content is accumulated into a specified visitor profile. Over time, this visitor profile can represent the types of information the visitor has viewed and serve as an indicator of his or her preferences. In this way, the invention can accumulate a visitor profile unobtrusively, without requiring the visitors to fill out a survey or questionnaire. The profile may also be augmented with explicit information the visitor provides over time, such as a name or address provided when ordering a product from the site.

The present invention then delivers personalized pages to the visitor by examining such visitor's profile. Another directive, called a personalization directive, may be placed into web pages that are to be customized by the invention. These directives cause a personalization function to be applied to the visitor's profile data. The result of the personalization function defines an attribute to be used for locating personalized page fragments, called "page components", that the invention then assembles into a customized page for the visitor. In this manner, each visitor may receive a page containing three different classes of data: common data received by all visitors, personalized data received by a similar group of visitors, and individual data received only by this one visitor. The present invention assembles all of this data and delivers a "personalized" page to the visitor.

The present invention stores personalized page components in a cache. Subsequent delivery of the same page components is satisfied by retrieving the information from the cache, rather than by dynamically generating it each time. The present invention can therefore take advantage of a common situation where large groups of visitors share

SBJ 00009

US 6,330,592 B1

3

similar interests and should receive the same data. Since previously generated personalized page components need not be re-generated for every visitor, computational overhead is reduced tremendously by supplying such pre-generated page components.

For example, a home page for a large web site might include a personalization directive describing the inclusion of an article related to a visitor's favorite NFL team. The personalization directive function examines the visitor profile, determines the favorite team, and includes the appropriate page with information about that team. In this way, each visitor to the web site might receive a different introductory web page, customized for their preferences. Even though every visitor receives a page that appears to be customized for them, since, in fact, there are only 30 or so NFL teams; the caching mechanism of the invention ensures that the dynamic page generation only occurs at most 30 or so times. If one million visitors come to the site, most of the visitors simply receive a web page that was already dynamically generated for a previous visitor. In essence, the invention allows "personalized" pages to be constructed by choosing from a set of previously computed pages, rather than by dynamically computing each page for every visitor.

It is a primary object of the present invention to provide an efficient mechanism for gathering visitor preference and behavior information and storing it in a visitor profile.

Another object of the invention is categorizing content in a website and associating viewed categorized content with a user to develop a visitor profile.

It is another object of the present invention to provide a highly efficient and scalable mechanism for assembling personalized pages based on information contained in the visitor profile, without requiring a full dynamically-generated customized page computation for each visitor.

It is still another object of the present invention to allow for specific data from the visitor profile to be directly inserted into personalized pages.

Yet another object of the invention is to insert pre-customized content into various areas of a single web page.

It is a further object of the invention to allow for visitor profile data to be based on the actual content viewed by the visitors.

It is another object of the invention to allow for visitor profile data to be gathered and updated efficiently even in the case where multiple web servers are operating simultaneously to deliver information to users in parallel.

It is another object of the invention to provide efficient management and storage of visitor profile data for large web sites that may have as many as 10 million visitors or more.

The above objects of the invention and the brief description of the preferred embodiment should be constructed to be merely illustrative of some of the more prominent features and applications of the invention. Many other beneficial results can be attained by applying the disclosed invention in a different manner or modifying the invention as will be described. Accordingly, other objects and a fuller understanding of the invention may be had by referring to the following Detailed Description of the preferred embodiment.

BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the present invention and the advantages thereof, reference should be made to the following Detailed Description taken in connection with the accompanying drawings in which:

4

FIG. 1 illustrates a client-server computer network that may be operated in accordance with the present invention;

FIG. 2 is an example page delivered by a web server;

FIG. 3 illustrates a relationship diagram of the primary components in the present invention; and

FIG. 4 illustrates the invention configured for use with multiple server computers.

DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 illustrates a client-server computer network 100 that may be operated in accordance with the present invention. For the preferred embodiment, the network 100 includes at least one client computer 110 and at least one server computer 130. The client computer 110 and the server computer 130 are connected by a transmission channel 120, which may be any wire or wireless transmission channel.

The client computer 110 may be a standard computer including a Central Processing Unit (CPU) 112 connected to a memory (primary and/or secondary) 114. The memory 114 stores a number of computer programs, including a "browser" 116. As known in the art, a browser is used to communicate with remote server computers 130 and to visually present the information received from such computers. The client computer 110 establishes network communications through a standard network connection device 118.

The server computer 130 includes standard server computer components, including a network connection device 138, a CPU 132, and a memory (primary and/or secondary) 134. The memory 134 stores a set of computer programs to implement the processing associated with the invention. These programs are collectively referred to as a the web server software 136. The invention may be used with any web server software, including, but not limited to, Netscape Enterprise Server from Netscape Inc., Internet Information Server from Microsoft, or Apache from the Apache HTTP Server Project.

FIG. 2 illustrates a typical web page 200. The web page contains graphical information and textual information. Web page design varies greatly, but usually follows a general pattern of being divided up into sections of related information. In the provided example, there are four areas of information 210, 220, 230, and 240. In the terminology of the invention, each of the distinct sections of the web page, such as 210, 220, 230 and 240, are called 'components'. The component on top 210 contains a company logo graphic 212. Below it is a component 220 containing sports news stories intended to be of interest to the web site visitor. At the bottom 230 is what is called in the art a "navigation bar" containing hyperlinks 232, 234 to other web pages on the site. In the preferred embodiment, a hyperlink is defined by HTML (or any other appropriate markup language) as a point-and-click mechanism implemented on a computer that allows a viewer to link (or jump) from one screen display where a topic is referred to (called the 'hyperlink source') to other screen displays where more information about that topic exists (called the 'hyperlink destination'). A hyperlink thus provides a computer-assisted way for a human user to efficiently jump between various web pages containing related information. Hyperlinks can be graphical 234, stylized text 232, or even plain text 224, conventionally formatted with underlining.

In the example of FIG. 2, the small component 240 on the page illustrates personalized information as provided in the manner of the present invention. The first line 242 shows an

US 6,330,592 B1

<table>
<tr><td>5</td><td>6</td></tr>
</table>

example of 'monogramming', where the generic information on the page has been customized with information specific to a particular web site visitor. The next line 244 shows an example of the results of a personalization directive. The information on the page has been customized to reflect the fact that this visitor, preferably based on prior visits, has demonstrated interest in the Round Rock Rocker's football team; therefore, a custom hyperlink 244 has been added to the page to provide the visitor with a quick way of obtaining more information about their favorite team.

The main story component 220 shows another example of personalization. Visitors interested in football can be shown a set of football stories 221, 223, 225; whereas other visitors may be shown basketball or baseball stories.

This type of personalization can be achieved in the prior art only by forcing the user to explicitly answer survey questions and creating individualized pages. For example, a survey would ask the visitor whether the visitor preferred to see football or baseball stories, and then ask the visitor for their favorite team in order to obtain profile information. Furthermore, current technology would require that every page on the web site be generated dynamically for each visitor, which results in slow response times and poor performance.

The present invention solves the problem of explicit questions and the performance problem. In the preferred embodiment, the method is implemented on a web site server. When the web site is being developed, "Web Content Items" are created by the developers of the web site. Web Content Items can be an entire web page, a component of a web page, an insertion into a web page, a graphic link and/or any other items that can be accessed and viewed by a user. Often times a content item is a self-contained story or fragment of data; for example, the individual stories 221, 223, 225 are each a Web Content Item. Web Content Items can reside at more than one URL. The Web Content Items are preferably defined through a markup language, including, but not limited to, HTML.

In the preferred embodiment the developer can then assign at least one category and/or a keyword to each of the Web Content Items. These categories and key words are used to determine visitor interest when they access Web Content Items on a Web Site.

In such a preferred embodiment, the developer thereby defines all the categories that can be used within the system. The categories might be broad definitions and/or include keywords. The developer can then devise a set of Web Content Items that can 'personalize' the Web Site for the visitor the next time the visitor accesses the web site. This personalization can be done according to the accumulated data in the visitor's file, gathered implicitly by observing which Web Content Items, and therefore which categories have been of interest to the visitor in the past. The 'personalization' will not be a one-time dynamically generated customized web page, which would be too resource intensive and therefore slow, but will be based on predetermined Web Content Items that are developed and then cached into memory.

The accumulation process functions when a visitor accesses a URL and the associated Web Content Items. At that point the program registers the representative categories belonging to the web page. If this is a new visitor, a new "visitor file" for that visitor is created; otherwise, a previous visitor file is accessed. In either case, the statistics on the accessed categories is updated in the visitor's file.

The visitor file contains a Liming tally of the visitor's interest preferably based on accessed Web Contents Items. In a preferred embodiment, an algorithm is included that gives greater weight to more recently accessed Web Content Items, thereby accounting for changing interests and tastes.

When a visitor accesses a web site that has an existing file for that visitor, the program determines from the file and the tallied categories, which pre-customized content, i.e., the personalized page components, to provide to the visitor.

Such predetermined content is cached in memory and is, preferably, designed by a web site to appeal to interests in certain topics.

The benefits of the present invention are immediately evident. The present invention gives the visitor the impression of a customized page visitor when in actuality it presents pre-customized pages and/or page components that have been cached. The system thereby conserves computing resources and retains a higher access speed on a server as opposed to those systems that dynamically generate customized pages for each visitor.

In the alternative embodiment, the pre-customized pages have at least one base Web Content Item and insert areas wherein personalized page components are provided and inserted to make each page appropriate for a given preference. In another alternative embodiment, the entire page can be obtained from the cache.

Returning to FIG. 2, the page is illustrative of how a base page is pre-customized to make it seemingly customized for a given visitor. Assuming that a visitor frequents a sports-oriented web site in the preferred embodiment, the main story on the page could be the same for all the pre-customized pages, for example, a Super Bowl story; however, the additional stories on the page can be adjusted with inserts of personalized page components items according to the visitor's preferences, such as individual team information. Assuming that visitor A in prior visits has frequented a number of Web Content Items with a keyword of "football", then when visitor A returns to the web site a page with personalized page-components will appear where the page components (e.g., 221, 223, 225) are Web Content Items comprising football-related stories.

FIG. 3 shows a relationship diagram for the invention. Requests begin when a browser 310 operating on a client computer (as in 110 in FIG. 1) makes a request to the web site server (as in 130 in FIG. 1). When the site is being accessed, the server request handler 320 analyzes the incoming request and the corresponding pages, and invokes the monogrammer 330 and the component assembler 340 as necessary.

The component assembler 340 examines the visitor file, if any, to determine if there is a preference to be associated with the accumulated category and keyword counts of the visitor. The visitor file is obtained from the visitor data manager 350, which serves as a central coordination point for retrievals and updates of visitor data within a single web server. If there is no file for this visitor, the program generates a file based on the visitor so as to determine the visitors reference for the next page requested.

If a visitor file exists for the current visitor, the program accesses such visitor file to determine the visitor's interests as determined by the keywords associated with prior Web Content Items served, and, in one embodiment, there may be a weighing factor or other algorithmic determination for the additional Web Content Items viewed by the visitor during the most recent usage. The program then selects a pre-customized page or pre-customized page components which

SBJ 00011

US 6,330,592 B1

7

should reflect this interest. These selections can be assembled by a component assembler 340, and may be further subject to personal modification by a monogrammer 330 to make changes such as inserting the visitor's name onto the page.

The component assembler uses the pre-customized file handler 360, to retrieve the Web Content Items, formatted as pre-customized pages, that are appropriate for this visitor. Pre-customized pages can be cached in a pre-customized file store 365, or can be dynamically generated on demand by the dynamic page generator 380.

The visitor may select any hyperlink on such page to access additional interesting content.

In addition, the visitor can still be shown other content not necessarily directly related to his or her interests. The visitor can still access these hyperlinks and URLs; therefore, in the preferred embodiment, the visitor file is an evolving file, since the visitor's interests can change over time for a number of reasons. Therefore, the present invention can allow an option to give greater weight to recently accessed Web Content Items.

The server request handler 320 can then update the visitor file data with the categories and keyword counts for the information assembled into the final page that is returned to the visitor's browser. The updated visitor file data is delivered back to the visitor data manager 350 and stored in the visitor data file store 375 by the visitor file manager 370.

FIG. 4 shows another embodiment 400 of the invention wherein there are multiple instances of the Server request handler and associated machinery. Web sites often use this form of functional replication to achieve higher performance by sharing the load across multiple server machines. A load balancer, such as a Cisco Local Director, a DNS round robin, or equivalent technology exists between the web site visitor's browser 410 and a set of server request handlers 431, 432, 433. Each server request handler is a complete copy and typically each one operates on a separate machine. The server request handlers each have their own visitor data manager 441, 442, 443. As a visitor makes multiple requests to the web site, each individual request may be redirected by the load balancer to a different request handle and visitor data manager. Therefore, as the category and keyword counts are updated by each individual server, some special mechanism must be used to ensure that updates are not lost by having one set of visitor data overwrite the results of another. This is the reason for having the visitor file manager 470 as a separate mechanism within the invention. There is only one visitor file manager and it serves as the collection point for all updated data generated by the individual visitor data managers 441, 442, 443. A further refinement is that the visitor data managers communicate an incremental update value to the visitor file manager. For example, consider the case where a visitor makes two requests to the web site, with each request being for a page containing keyword "A". The first request might be handled by server request handler 432 (and visitor data manager 442). The second request might be handled by server request handler 443 (and visitor data manager 443). Each one of these data managers has a visitor profile stating that the visitor saw one instance of the keyword "A". However, when each reports its results back to the visitor file manager 470, the visitor file manager sums the results together thus obtaining the correct value of two instances for the keyword "A". The final results is written into the visitor data file store 475 and made available for future operations.

It should be appreciated by those skilled in the art that the specific embodiments disclosed above may be readily uti-

8

lized as a basis for modifying or designing other methods for carrying out the same purposes of the present invention. It should also be realized by those skilled in the art that such equivalent constructions do not depart from the spirit and scope of the invention as set forth in the appended claims.

What is claimed is:

1. A method of customizing a web site, said method comprising:

labeling content of the web site;

when at least one visitor accesses the content of a web site, registering the labeled accessed content in a personalized data file;

storing the data file for the at least one visitor;

generating at least one pre-customized display for a first visitor;

caching the at least one pre-customized displays on the server computer;

displaying the at least one pre-customized display to the first visitor;

analyzing the data file of a second visitor and associating the second visitor with the at least one pre-customized display, wherein analyzing is performed after generating; and

displaying the at least one pre-customized display to the second visitor, wherein the at least one pre-customized display is not regenerated before displaying the at least one pre-customized display to the second visitor.

2. The method of claim 1 wherein labeling the content of the web site comprises attaching at least one category to each web content item.

3. The method of claim 2 wherein registering the labeled accessed content comprises accumulating the number of accesses to each category in the personalized data file.

4. The method of claim 3 wherein analyzing the data file comprises:

prioritizing the categories in the data file; and

associating the highest weighted category with at least one pre-customized display.

5. The method of claim 1 wherein the pre-customized display is an insert to be placed within a web content item.

6. The method of claim 1 wherein the pre-customized display is a web page.

7. The method of claim 1 wherein the generating of a pre-customized display is not generated until a first visitor first requires such a display.

8. The method of claim 1 wherein storing the data file can be performed by multiple servers operating in parallel, without loss of information.

9. The method of claim 1 wherein the displaying of the pre-customized display comprises inserting a plurality of pre-customized displays onto a web page accessed by the visitor.

10. A computer-readable medium having computer executable software code stored thereon, the code for personalizing a web site without dynamically generated web pages for each visitor, the code comprising:

code for labeling the content of a web site with selected categories;

code for generating a data file for a visitor;

code for accumulating information regarding labeled content, to place such information in the visitor data file;

code for determining the selected category associated with the visitor's interest, wherein such determination is based on the accumulated information in the visitor data file; and

SBJ 00012

US 6,330,592 B1

9

code for presenting cached pre-selected web content to the visitor, wherein such pre-selected web content is associated with the selected category.

11. A computer readable memory that can direct a web site server computer to function in a specified manner, comprising:

visitor files stored in said computer memory of said web site server computer;

pre-customized web content items stored in said computer memory of said web site server computer; and

executable instructions stored in said computer memory of said web site server computer, said executable instructions including

(a) instructions to access an existing visitor file for a visitor;

(b) instructions to review data in existing visitor file to determine visitor preferences; and

(c) instructions, based on said visitor preferences, to provide pre-customized files to visitor.

12. The computer readable memory of claim 11 wherein the pre-customized files are pre-customized web content items.

13. The computer readable memory of claim 11 wherein the existing visitor file contains visitor preference data.

14. The computer readable memory of claim 13 wherein the visitor preference data contains a count of keywords.

15. The computer readable memory of claim 14 wherein the keywords have a weighted value dependent upon the time of access of associated web content.

16. A computer program product for operating a web site on a server computer, the computer program product comprising:

a computer usable medium having computer readable program code means embodied in said medium for searching, said computer readable program code means comprising;

10

means for labeling the content of a web site;

when at least one visitor accesses the content of a web site, means for registering the labeled accessed content in a personalized data file;

means for storing the data file for at least one visitor;

means for generating a set of pre-customized displays;

means for caching the set of pre-customized displays on the server;

when the at least one visitor accesses a Web Site, means for analyzing the data file of the visitor and associating the user with a precustomized display; and

means for displaying the pre-customized display onto a web page accessed by the visitor.

17. Computer executable software code stored on a computer readable medium on a web site server computer, the code for personalizing a web site, the code comprising:

code for labeling the content of a web site with selected categories;

code for generating a data file for a visitor;

code for accumulating information regarding labeled content, to place such information in the visitor data file;

code for determining the selected category associated with the visitor's interest, wherein such determination is based on the accumulated information in the visitor data file; and

code for presenting cached pre-selected web content to the visitor, wherein such pre-selected web content is associated with the selected category.

18. The computer executable software code of claim 17 further comprising code for weighting accessed information based on at least one specified variable.

19. The computer executable software code of claim 18 wherein the at least one specified variable is time of access.

* * * * *

SBJ 00013